## SUN MUTUAL INSURANCE COMPANY *v*. DUDLEY.

### Opinion filed April 23, 1898.

1. FIRE INSURANCE—NONWAIVER CONTRACT—EVIDENCE.—In an action on a policy of fire insurance, where the insured claimed that the insurer waived all grounds of forfeiture by asking for proofs of loss, it is competent for the insurer to introduce in evidence a nonwaiver contract signed by the insured after the loss, providing that any action taken, request made, or information received, by the insurer while investigating the cause of the fire, the amount of loss or damage, or other matters relative to the claim, "shall not, in any respect or particular, change, determine, waive, invalidate or forfeit any of the terms, conditions or requirements of the policy." (Page 248.)

2. SAME—COVENANT AS TO KEEPING BOOKS.—A policy of fire insurance contained a covenant that the insured would keep a set of books showing a complete record of business, including all purchases and sales, together with the last inventory. Insured kept a cash book, showing the daily sales, and the last inventory, but no record of purchases. *Held* not a compliance with the covenant. (Page 249.)

3. SAME—FORFEITURE.—It is not necessary for an insurer to say or do anything in order to be entitled to the benefit of a forfeiture of its policy until sued thereon, provided the assured, under the circumstances, can not reasonably infer therefrom that the insurer does not intend to

insist or rely upon it; mere silence, without additional circumstances, being insufficient to warrant such inference.  (Page 250.)

4. PRACTICE—WITHDRAWING INTERROGATORIES FROM JURY.—The court should not withdraw special interrogatories from the jury upon the ground that they could not agree as to the answers thereto if they could not find a general verdict without agreeing upon such answers.  (Page 250.)

Appeal from Hempstead Circuit Court.

RUFUS D. HEARN, Judge.

*Williams & Arnold,* for appellants.

The evidence totally fails to show that plaintiff complied with the conditions of his policy; hence any instruction based on an assumption of such compliance is erroneous.  57 Ark. 461; 42 Ark. 57.  The fulfillment of the requirement in the policy as to the keeping of a complete record of the business was a condition precedent to recovery of the insurance, and a strict compliance with its terms was necessary.  58 Ark. 575; 62 Ark. 348; 151 U. S. 452; 1 May, Ins. §§ 175, 176 and cases cited; 61 Ark. 214; 1 Wood, Fire Ins. 448.  Therefore, any evidence tending to show a substantial compliance with these requirements was erroneous.  The court erred in refusing to allow appellants to introduce in evidence the agreement, signed by appellee, to the effect that none of the acts done or statements made by the insurers, in endeavoring to ascertain the amount of the loss, should constitute a waiver of the conditions of the policy.  Such an agreement is valid, and estops the insured to claim a waiver of conditions.  43 N. W. 59; 49 Pac. 555; 33 Pac. 633; 65 N. W. 742; 35 S. W. 955; 66 N. W. 525; 31 N. W. 616; 2 Biddle, Ins. § 1054, p. 329; 38 S. W. 1119; 71 N. W. 272; 3 Mo. App. 56; 35 N. Y. Supp. 374; 11 R. I. 139; 78 Ky. 150.  Any instruction based on the assumption that the company waived the forfeiture was erroneous.  29 N. W. 521.

*Jas. H. McCollum,* for appellees.

The courts do not favor forfeitures, and will not declare them where they can reasonably avoid it.  1 Joyce, Ins. § 220; May, Ins. (3 Ed.) §§ 170, 174 and 367; 53 Ark. 494; 96 U. S. 577; 34 Am. St. Rep. 565; 45 Am. St. Rep. 361.  The ob-

ject of the "iron safe" clause in a policy of insurance is to enable the insurer to arrive at the amount of the loss. 3 Joyce, Ins. § 2063; 61 Ark. 207; 62 Ark. 43. Any method of compliance which does not injure the insurer or prejudice his rights is good. 50 Am. St. Rep. 832; May, Ins. § 175. Any doubt as to the construction of the clause is to be resolved in favor of the assured. 54 Ark. 376; May, Ins. § 175. Whether or not assured complied with clause was a question for the jury. 58 Ark. 565. If the insurer, after becoming aware of the facts that worked a forfeiture of the policy, failed to claim same, and so acted as to induce the assured to believe such forfeiture is waived, and such assured, relying on the acts and instructions of the insurer, made out proofs of loss, at an expense, such forfeiture will be treated as waived. 53 Ark. 494; 7 Am. St. Rep. 495; 11 *ib.* 51; 15 *ib.* 739; 25 Am. St. Rep. 133; 54 *ib.* 550; 3 Dak. 80; 35 S. W. 955. The non-waiver agreement ousts the courts of their jurisdiction to declare a waiver when the facts are such as to constitute such. Hence, it is void, as being against the policy of the law. Joyce, Ins. §§ 904, 2530, 2531 and 3330; 8 Am. St. Rep. 913, and note; 35 Am. St. Rep. 793; 22 L. C. P. Ed. U. S. Sup. Ct. Rep. 365. The contract was without consideration, and therefore invalid. Lawson, Cont. § 91.

BATTLE, J. On the 17th of February, 1894, the Sun Mutual Insurance Company of New Orleans issued to C. R. Dudley a policy insuring him against "all direct loss or damage by fire, to an amount not exceeding $700, on his stock of merchandise in the town of Hope," in this state, for a period of one year from the 18th of February, 1894. On the 7th of November, 1894, C. R. Dudley, with the consent of the insurance company properly given, transferred the policy and all the property protected thereby to Dudley Bros., a firm composed of C. R. Dudley and R. E. Dudley. On the 13th of January, 1895, the stock of merchandise was destroyed by fire, and afterwards, on the 30th of January, 1895, Dudley Bros. transferred the policy to Val. Duttenhoffer & Sons, Jarvis, Phillips & Co., and Gauss-Shelton Hat Co. On the 17th of May, 1895, Dudley Bros. and their assigns commenced an action against the

insurance company and the sureties on its bond, filed with the auditor of this state, in the Hempstead circuit court, upon the policy, to recover damages occasioned by the fire.

The policy sued on contains this covenant: "The assured under this policy hereby covenants and warrants to keep a set of books showing a complete record of business transacted, including all purchases and sales (cash sales need not be itemized except by daily totals), together with the last inventory of said business; and further covenants and agrees to keep such books and inventory securely locked in a fire proof safe at night, and at all times when the store mentioned in the policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the house where said business is carried on; and in case of loss, whether the store be open for business or not, the assured warrants and covenants to produce such books and inventory, and, in the event of a failure to produce the same, this policy shall be null and void, and no suit or action at law shall be maintained thereon for any such loss."

The policy further provides that the insured, as often as required, shall produce for examination all books of account, bills, invoices, or other vouchers, or certified copies thereof, if the originals be lost, at such reasonable place as may be designated by such defendant company or its representative, and shall permit extracts thereof and copies to be made."

The defendants, denying any liability under said policy, alleged, among other things, as a defense, that "the said plaintiffs, Dudley Bros., did not keep a set of books showing a complete record of business transacted, including all purchases and sales, together with their last inventory of said business; that said plaintiffs, Dudley Bros., have failed and refused to produce to said defendants such books as are contemplated by such provision in said policy, or books of any kind whatever; that said provision in said policy is a warranty, and, the same having been broken, the policy is void; and that plaintiffs, Dudley Bros., though called upon to do so, have failed to produce for examination either the said books of account, the original bills and invoices of goods alleged to have been bought since the issuance of said policy, or certified copies thereof, and

that, by reason of said failure on the part of said plaintiffs, said policy is null and void."

The issues in the action were tried by a jury.

In behalf of the plaintiffs, C. R. Dudley testified that the goods destroyed were of the value of $5,345.66, and that the insurance on them amounted to $4,000, including the policy sued on. He further testified "that the only book kept relating to the business prior to August or September, 1894, was what he called a 'cash book,' but it contained nothing except a record of the totals of daily cash sales. In August or September, 1894, he began to keep a bill register, in which was entered the date and amount of invoices of goods purchased, the maturity of the bills, from whom purchased, and when paid," but nothing more. "He (and his firm) kept this register and the original invoices in lieu of merchandise account, the bills representing the debit side and the cash, the credit side." His firm, Dudley Bros., "took an inventory of the stock December 24, 1894," and thereafter purchased and received no goods, and kept no books except the cash book, and "the invoices and bill register were not kept in the safe, but were laid aside as of no use, and were on a desk in the store the night of the fire, and were destroyed. The only book produced when called for by the adjusters was merely the memorandums of totals of daily cash sales, and this was the only book kept in the safe after the inventory was taken."

He also testified as follows: "After the fire I talked with Mr. Balfour Klein, representing the defendant, and one Mr. Meyers, representing the other insurance companies, whose policies we held on this stock. I told them that all the books I had was the cash book and the inventory. They did not claim the forfeiture of the policy at the time, but before they looked at the books they asked me to sign the non-waiver agreement. This was immediately after they reached here, and before they had begun to examine into the question of loss, and I signed the non-waiver agreement. After I made and signed the non-waiver agreement, I gave them my book and inventory; also my policy. I produced the cash book and inventory, and told them that they were all I had. They asked me a few questions, and told me they would take the matter

under consideration, and the next day they told me from what they could see they would be willing to pay us fifteen hundred dollars ($1,500), and that they would take the responsibility upon themselves. This I refused to accept. They told me to get up proofs of loss, and send them in, and the policies might be paid. They did not say that the policy had been forfeited. I then employed a justice of the peace by the name of Wallace, and he got up the proofs of loss. By the conduct of these adjusters I was led to believe that they would pay me, if I would prepare and send in proofs of loss. They told me that, before they proceeded to business, I must sign the paper. After I signed the paper or non-waiver contract, they asked me to produce the books, and said that if my loss was just they would pay the policies."

The defendants introduced Balfour Klein, who testified as follows: "Before investigating the amount of the loss, we asked C. R. Dudley to sign the non-waiver contract, and if he had not done so we would have gone home without having investigated his loss at all. We then took the cash book and inventory, which have been introduced in evidence, and that was all he produced to us, and we told Mr. Dudley that they were not sufficient. We told him that we would make him a compromise offer of fifteen hundred dollars ($1,500) in order to avoid a law suit; and at the same time told him we did not admit any liability, but that this was done simply as a matter of compromise. He did not accept it, and we withdrew the offer. This terminated the interview with Dudley Bros., or either of them, and nothing else has taken place between us except correspondence. I have with me the non-waiver contract signed by Dudley Bros., which I here produce." Thereupon the defendants asked leave to read said non-waiver contract to the jury, but the court refused to allow said defendant to read said contract to the jury, and excluded the same, to which ruling and order of the court the defendants at the time excepted. Said agreement is as follows: "It is hereby mutually stipulated and agreed by and between Dudley Bros., party of the first part, and the insurance company or companies whose name or names are signed hereto, each acting for itself, party of the second part, that any action taken, request made, or information received,

by said party of the second part in or while investigating and ascertaining the cause of fire, the amount of loss or damage, or other matters relative to the claim of said party of the first part for property alleged to have been lost or damaged by fire on the 13th day of January, 1895, shall not in any respect or particular change, determine, waive, invalidate or forfeit any of the terms, conditions or requirements of the policies of insurance of the party of the second part held by the party of the first part, or any of the rights whatever of any party hereto. The intent of this agreement is to save and preserve all the rights of all the parties hereto, and permit an investigation of the claim and the determination of the amount of the loss or damage, in order that the party of the first part may not be unnecessarily delayed in their business, and that the amount of their claim may be ascertained and determined without regard to the liability of the party of the second part, and without prejudice to any rights or defense which said party of the second part may have. C. R. Dudley, of and for Dudley Brothers. G. L. Meyers, Adjuster Southern Insurance Co., Germania Insurance Co. W. B. Klein, Adjuster. Sun Mutual Insurance Co. Palatine Insurance Co."

Klein further testified: "I never requested or told Dudley Brothers, or either of them, to make out proofs of loss. I never made such request of any person insured in my life. This non-waiver agreement was to prevent anybody's rights from being waived by reason of investigating the books and question of loss."

Thereupon the defendant introduced J. T. Hicks, and others, "who testified, in substance, that they were experienced book-keepers, and knew the custom of keeping books at Hope, Arkansas, where the business was run on a cash basis, and that they knew of no one keeping such books as were read in evidence in this cause. That the books kept by the plaintiffs, Dudley Bros., did not show a complete record of business transacted, including purchases and sales, or anything else except the aggregate of the daily cash sales of Dudley Bros. There could be no complete record of a mercantile business without a merchandise account. That there was no way to ascertain the condition of the business of Dudley Bros. from the record

kept by them. That there was nothing to indicate what was done with the cash taken in; no record of money paid to creditors; neither was there any record of purchases. They kept no expense or freight account. That no complete record could be made from these books. That the expense of a business would have to be known to arrive at the profits, and that the profits would have to be known in order to estimate the value of the stock remaining on hand."

The plaintiffs were allowed to ask the following question of witness J. T. Hicks:

"Q. If Dudley Bros. made an inventory of their stock on December 26, 1894, and received no goods thereafter, and kept an account of all cash sales from that time until the fire, could it not be ascertained what was the value of their stock?"

The defendants objected to this question, but the court overruled the defendant's objection, to which the defendants at the time excepted, and said witness answered as follows:

A. "If the inventory had been correctly taken, and the cash book correctly kept from that time, the difference between the two, making allowance for the gross profits and expenses, would approximate the value of the stock at the time of the fire. I kept a merchandise account, and each month credited the same with the amount of the cash sales. I kept a cash book and a ledger. The only way I could keep up with my business was to keep a merchandise account or bill ledger as well as cash sales. I kept all my invoices, bill ledger and cash sales, as well as my last inventory, in my safe." The defendants objected to this answer, and saved exceptions.

Other evidence was adduced, but it is not necessary to set it out in this opinion.

Many instructions were given by the court to the jury over the objections of the defendants, and many were asked for and refused. So many as are necessary to present the questions which these instructions give rise to are as follows:

"7. You are instructed that the provision in the policy requiring Dudley Bros. to keep a set of books showing a complete record of their business transactions, and to keep said books in a fire-proof safe, as provided in said policy, was not complied with by keeping the last inventory of December 26,

1894, and the record of cash sales from the date of said inventory until the fire occurred."

"9. You are instructed that it was not necessary for the defendant or its agent to say or do anything in order to claim the benefit or advantage of a forfeiture of the policy sued on, if such forfeiture has been shown, and it was not necessary for the defendant to deny liability on said policy, or claim such forfeiture until the answer herein was filed."

These instructions were asked for by the defendants, and refused by the court.

The court required the jury to answer the following questions:

"1. Did the plaintiffs, Dudley Bros., keep such a set of books, and produce the same, as required under the 'iron-safe clause' contained in the policy introduced in this case?

"2. If you answer that such a set of books was not kept, as required under the 'iron-safe clause,' state whether or not you find that the agent of the defendant waived such failure within the meaning of the instructions of the court on the subject of waiver."

The jury retired, and, after remaining out about two hours, returned into court, and announced that they could not agree as to the answers which should be given to the interrogatories, and the court withdrew the interrogatories, over the objections of the defendants, and shortly afterwards the jury returned into court with a verdict in favor of the plaintiffs for $516.25. The defendants appealed.

The first question presented for our consideration by this statement of facts is, did the court err in excluding the agreement in writing entered into by Dudley Bros. and the insurance companies? An insurance company has the right to judge and act for itself as to the conditions upon which it will insure against losses by fire and other causes. The owner of property is not bound to accept insurance upon any particular conditions, but, if he does, he cannot defend against a breach thereof upon the ground they are immaterial. Having entered into the contract of insurance as evidenced by its policy, the insurance company has the right to rely and insist upon all its terms and conditions, and take advantage of all forfeitures incurred by

the breach of any of its conditions. To protect itself in the exercise of this right, it may enter into an agreement with the assured to the effect "that any action taken, request made, or information received," by it, "in or while investigating and ascertaining the cause of the fire, the amount of loss or damage, or other matters relative to the claim" of the assured "for property alleged to have been lost or damaged by fire," "shall not in any respect or particular change, determine, waive, invalidate or forfeit any of the terms, conditions or requirements of the policy," "or any of the rights whatever of any party thereto." In this case the insurance company undertook to protect itself against a claim of waiver and estoppel by such an agreement, and offered it as evidence; and the court excluded it, and erred in so doing. It was competent, relevant, material and admissible for the purpose of aiding the jury in determining whether there had been a waiver of the forfeitures claimed by the defendants, and should have been admitted for that purpose. *Phœnix Ins. Co. v. Minner,* 64 Ark. 590.

The court also erred in allowing the plaintiffs to prove that the value of the stock of merchandise destroyed by the fire could be ascertained from the inventory of their stock made by Dudley Bros. on the 26th of December, 1894, and the account of cash sales kept by them from that time until the fire, provided the inventory and cash book were correct. The assured covenanted that they would keep a set of books showing a complete record of business transacted, including all purchases and sales, together with the last inventory of said business; and it is stipulated in the policy that it shall be void in the event the assured fails to produce such books and inventory in case of loss, and no action can be maintained thereon for such loss. This condition is both useful and valid. Its object is apparent. It was to enable the insurance company to ascertain the extent of any loss occasioned by fire during the life of the policy, and to test the accuracy of the statement or inventory furnished by the assured for that purpose. By such a set of books the amount and value of the goods acquired while the policy was in force could be ascertained; and, in the event any doubt as to the correctness of the books in this respect should arise, the insurance company might be enabled

to ascertain from the persons shown by the books to have sold the goods the sales actually made; and the amount disposed of and on hand would be made to appear. They were necessary to protect the insurer against the errors and dis—honesty of the assured. Without them it would be left without adequate means to protect itself against false statements and inventories furnished by the assured in case of loss. Any set of books which failed to furnish the information required to be contained in the books which the assured covenanted to keep would not meet the requirements of the contract of insurance, and prevent a forfeiture of the policy, because the policy provides that it shall be void in the event such books are not kept. For that reason, if no other, the evidence that the value of the stock destroyed could be ascertained from the inventory of the 26th of December, 1894, and the account of cash sales kept by Dudley Bros. from that time until the fire was incompetent; and it was prejudicial to the defendants, because it was calculated to lead the jury to believe there was no forfeiture of the policy on account of a failure to keep such books.

The court erred in refusing to give the instruction numbered 7, which was asked for by the defendants, for the reasons already given.

As to the instruction numbered 9, which was refused, it is sufficient to say that it is not necessary for an insurer to say or do anything in order to claim and be entitled to the benefit or advantage of a forfeiture of its policy until sued thereon, provided the assured, under the circumstances, could not reasonably infer therefrom that the insurer did not intend to insist or rely upon it. Mere silence, without additional or accompanying circumstances, would not be sufficient to warrant such inference. Without this qualification, the instruction should not have been given.

The court should not have withdrawn the interrogatories from the jury after they announced that they could not agree as to the answers that should be made to the same. It is obvious that they were not authorized to return a verdict in favor of the plaintiffs, in the absence of interrogatories, until they had agreed that there was no forfeiture on account of the failure to keep books, or, if there was, it was waived by the in-

surance company. These were the facts, and the only facts, they were required to find in order to answer the interrogatories. We do not, however, decide that the court did or did not commit a reversible error in withdrawing the same.

For the errors in excluding and admitting evidence and in the refusal to instruct the jury, which we have indicated, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.