L. R. ARGO v. JOE BLACKSHEAR ET UX

5-4249                                                    416 S. W. 2d 314

Opinion delivered June 5, 1967
[Rehearing denied July 26, 1967.]

Odell Pollard and Jerry Cavaneau, for appellant.

*Reed & Blackburn,* for appellee.

LYLE BROWN, Justice. Joe and Dessie Blackshear, appellees and parents of eight-year-old Phyllis Blackshear, recovered judgment for the death of Phyllis which occurred in a traffic mishap. Phyllis was crossing a highway in Cleburne County and was struck by a car driven by appellant, L. R. Argo. The sole question on appeal concerns the action of the trial judge in setting aside the interrogatories answered by the jury and resubmitting the case to the same jury on a general verdict.

The case was first submitted on four interrogatories. The answers found driver and pedestrian equally negligent and fixed total damages to the parents at $18,000. Each interrogatory was signed by the foreman and the jury poll verified unanimity. A conference immediately ensued between court and counsel. All of the conversation is not recorded but it is apparent that counsel for appellee parents requested the trial judge to ascertain of the jurors whether it was their intent that the parents not recover. Addressing the jury, the court inquired:

> "I have to go rather carefully on this, this is very delicate, I want to know if it was the jury's finding and your intention that you intended for your answers to reflect that the plaintiffs in this case would not recover any amount from the defendant. . ."

The foreman responded—and the jury affirmed by nods—that they wanted the parents to recover $18,000. The judge further inquired if that was their intention "even though you found that Phyllis Blackshear contributed 50% of the negligence to cause the accident." Again the answer was in the affirmative.

The judge ruled that the interrogatories "caused some confusion in the minds of the jury, especially as to the effect of their answers." He then proceeded to

give AMI 2102 (comparative negligence). Additional argument was allowed the attorneys to permit them to cover comparative negligence. The jury was then given a general verdict form. It returned an award of $18,000.

Counsel are not in agreement as to all that transpired between the return of the interrogatories by the jury and its reconvening to consider the general verdict. We find our recitation of events to be borne out by the record. The lawyers' disagreements are due principally to the failure to record all the conversations between court and counsel outside the hearing of the jury. However, there is no dispute about the facts we have recited and which really control the decision is this case.

The trial court committed reversible error. The cause was submitted to the jury under Ark. Stat. Ann. § 27-1741.2 (Repl. 1962), being submitted on "written questions susceptible of categorical or other brief answer . . . " Collectively the answers constitute a special verdict. If the answers are consistent with the law and the evidence, and if a poll of the jury reflects the answers to represent the findings of the jury, they must be accepted as the verdict in the case. The interrogatories, the answers, and the poll of the jury meet all these prerequisites. See, 89 C. J. S., Trial § 571. It then becomes the duty of the trial judge to enter the verdict. That verdict remains, unless of course it is subsequently set aside on statutory grounds.

When the jury was polled and further questioned by the judge as to their intentions in answering the interrogatories, at no place did they retract the findings on total damages and apportionment of negligence. The only additional information supplied was to the effect that they wanted to see plaintiffs recover the full $18,000. This pointedly illustrates the value of interrogatories. Jurors honestly answer four relatively simple questions, not knowing the legal effect will be contrary to their personal wishes. Additionally, this situation justifies the rule that for the judge to specifically inform the jurors

as to the effect of their answers on the ultimate judgment is reversible error. 90 A.L.R. 2d 1041. As said by this court in *Wright* v. *Covey*, 233 Ark. 798, 349 S. W. 2d 344 (1961) : "The reason for the rule is that the special interrogatories are intended to elicit the jury's unbiased judgment upon the issues of fact, and this purpose might be frustrated if the jurors are in a position to frame their answers with a conscious desire to aid one side or the other."

In *Skidmore* v. *Baltimore & O. R. R.*, 167 F. 2d 54 (2d Cir. 1948), Judge Frank discusses extensively the pros and cons of general and special verdicts. That decision favors special verdicts and emphasizes that when special verdicts are employed, the judge should not give any charge "beyond what is reasonably necessary to enable the jury to answer intelligently, the questions put to them." Under that procedure "the appeal to the jurors' cruder prejudices will frequently be less effective."

A judgment on the general verdict was entered. We hold that judgment to be erroneous. We reverse and remand with directions to set aside that judgment and direct that the special verdict of the jury be entered.

JONES and BYRD, JJ., concur.

J. FRED JONES, Justice, concurring, I would reverse the trial court but I would remand for a new trial rather than for entry of verdict.

When this accident occurred, the appellee was traveling in a southerly direction on blacktop Highway 25. He was driving a Chevy II stationwagon weighing 3,020 pounds and was pulling a boat and trailer weighing over half as much as the stationwagon. When about 150 or 200 *yards* distance from the Blackshear residence, he saw Ella Jo, an older sister of Phyllis, come from the driveway of her home onto the highway and cross the highway from east to west. Appellee did not recall seeing or meeting other traffic in the vicinity of the accident.

Appellee testified that just *seconds* after he saw Ella Jo cross the highway, he saw Phyllis about eight or ten feet before she entered the highway, or just after she entered the highway. She had her head turned toward her left looking south on the highway when he saw her. She entered the highway running diagonally from east northwesterly across the highway and appellee applied his brakes when he first saw Phyllis. The automobile skidded 153 *feet* south, all on the west side of the highway, and struck Phyllis near the west edge of the blacktop.

With this testimony from the appellee himself, I am of the opinion that the trial court was attempting to set aside the jury verdict on the interrogatories and grant a new trial in the proper exercise of its discretion. If this was the intention of the trial court, it, of course, committed error in the manner it went about accomplishing its purpose.

Even though the trial court may still set aside the verdict and grant a new trial if it feels such procedure necessary and justified by the record in this case, I would reverse and remand for a new trial.

Byrd, J., concurs.