Louise MORRIS *v.* SOUTHWESTERN BELL TELEPHONE COMPANY, Welton Davis, Jr., and Ulysses Davis

88-302                                              771 S.W.2d 761

Supreme Court of Arkansas
Opinion delivered June 19, 1989
[Rehearing denied July 17, 1989.*]

*Schieffler Law Firm*, for appellant.

*Donald D. Young, Robert E. McCallum, Garry S. Wann,* and *Martha M. Adcock*, for appellee.

JACK HOLT, JR., Chief Justice. Appellant Louise Morris contends that the trial court erred in directing verdicts in favor of the appellees, Welton and Ulysses Davis, and in denying her motion for new trial as to all parties. We find no error and affirm.

In 1981 Southwestern Bell Telephone Company (Bell)

---

*Purtle and Glaze, JJ., would grant rehearing. Newbern, J., not participating.

entered a "Unit Cost Contract of a Continuing Nature" with Welton Davis, Jr., and Lawrence Davis d/b/a Luco Construction Company (Luco), whereby Luco was to do excavation and backfilling of telephone line trenches for Bell. During the summer of 1983, Ulysses Davis, an employee of Luco acting pursuant to the contract, dug trenches, placed telephone cable, and backfilled trenches in the Caney Creek Subdivision in Helena, Arkansas. Neither Welton nor Lawrence Davis personally worked on this project. Ulysses Davis completed the job on or about August 13, 1983. Around September 13, 1983, James Herrick, a Bell supervisor responsible for overseeing the project, inspected the work, accepted it, and paid Luco.

On the evening of January 12, 1984, appellant Louise Morris, a resident of the subdivision, stepped into a sunken trench in her front yard, causing her personal injuries. Thereafter, she filed suit against Bell, Welton Davis, Jr., and Ulysses Davis alleging that her injuries were proximately caused by the negligence of the Davises and employees of Bell. Specifically, she alleged that the defendants were negligent in failing to properly dig, backfill, and cover holes and trenches in her yard, in failing to warn her of said hazards, in failing to make reasonable inspection of the work after completion, and in failing to notify her that they were working in her yard. Bell filed a cross-claim against the Davises asking to have judgment against them in the event it suffered an adverse judgment on Morris' complaint.

At the conclusion of trial, both Welton and Ulysses Davis moved for a directed verdict. The trial court granted Welton Davis' motion, finding that there was not a basis, factual or otherwise, for keeping him in the suit. The court granted Ulysses Davis' motion on the grounds that (1) once Bell accepted the contract work it became the responsible party for maintaining the trenches, thereby relieving Ulysses Davis of liability, *see Devazier* v. *Whit Davis Lumber Company*, 257 Ark. 371, 516 S.W.2d 610 (1974); *Southwestern Bell Tel. Co.* v. *Travelers Indemnity*, 252 Ark. 400, 479 S.W.2d 232 (1972), *Chesser* v. *King*, 244 Ark. 1211, 428 S.W.2d 633 (1968), and that (2) there was no evidence of negligence on his part.

Using standard comparative fault interrogatories, the jury found that Bell was 20% at fault for the accident and that Morris

was 80% at fault. The jury also determined by interrogatory that Ulysses Davis did not breach the contract with Bell. Accordingly, judgment was entered in favor of defendant-appellees. Morris appealed after the trial court denied her motion for new trial.

For reversal, Morris contends that the trial court erred in not granting her a new trial and in granting appellee Ulysses Davis' motion for directed verdict in that his defective work was concealed when Bell accepted his work; that the "acceptance doctrine" has no application under the circumstances; and that in any event, this doctrine should be rejected. In addition, Morris claims that the trial court erred in directing a verdict in favor of Welton Davis inasmuch as he was contractually responsible for the job.

We do not reach the issue as to whether or not the court committed error in directing verdicts in the Davises' favor or in denying Morris' motion for new trial since any error under the circumstances was harmless. Likewise, it is not necessary that we address Morris' arguments concerning concealment or the "acceptance doctrine" inasmuch as examination of the jury's answers to interrogatories provides us with a sufficient basis to exempt both Welton and Ulysses Davis from any liability to Morris.

■ This court has indicated that examination of jury interrogatories is an appropriate way to determine exactly what the jury believed. *Argo* v. *Blackshear*, 242 Ark. 817, 416 S.W.2d 314 (1967). In addition, we have held that a jury verdict may demonstrate that an alleged error by a trial court was harmless. *See Billings* v. *Gipson*, 297 Ark. 510, 763 S.W.2d 85 (1989); *Ray* v. *Murphy*, 284 Ark. 512, 683 S.W.2d 916 (1985).

As previously mentioned, the jury determined by interrogatory that Ulysses Davis did not breach the contract with Bell. The contract between Bell and the Davises provided in pertinent part as follows:

14. *Defects in Work:* The Contractor shall correct at his expense all defects and deficiencies in the work which result from material furnished by the Contractor, workmanship or failure to follow the plans, drawings, Bell systems practices, or other specifications made a part of

this contract, which are discovered within one year from the date the work is accepted.

. . . .

22. *Duty of Safe Performance:* The Contractor shall take every measure to protect all persons and property, including property of the Telephone Company, from injury arising out of the performance of the work.

23. *Condition of Job Site:* The Contractor shall take all necessary and customary precautions to prevent injury to persons or property . . . . The Contractor shall continue to maintain such precautionary measures as long as the condition created exists, whether or not the work has been accepted by the Telephone Company for payment purposes.

■ In finding by interrogatory that Ulysses Davis did not breach the contract, it logically follows the jury concluded that he properly corrected all defects or deficiencies discovered within one year from the date of acceptance (paragraph 14), took every measure to protect all persons and property from injury arising out of the performance of the work (paragraph 22), and took and maintained all precautions to prevent injury to persons or property (paragraph 23). Essentially this is a finding that Ulysses Davis was not negligent. A finding that Ulysses Davis was not negligent compels a finding that Welton Davis, who did not work on the Caney Creek project, was also not negligent.

The jury's finding conclusively removes both Welton and Ulysses Davis from liability to Morris.

Affirmed.

PURTLE and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. My major disagreement with the majority opinion is that it concludes that the jury's finding, upon special interrogatories, that Ulysses Davis did not breach the provisions of the excavation contract entered into between Southwestern Bell Telephone Company (Bell) and the Davises, means both Ulysses and Welton Davis committed no negligence in connection with the excavation work. Such a

conclusion seems so fundamentally wrong that I need not elaborate. Ms. Morris brought the action in tort, alleging the requisite elements of negligence against Bell and the Davises, and her action was submitted to the jury on the theory that the appellees were negligent. Perhaps, she should not prevail on her complaint, but this court should not dispose of her action based on the finding that the Davises did not breach their contract with Bell.

PURTLE, J., joins this dissent.