Evelyn Cox DEWITT, Plaintiff,

v.

David D. SMITH, et al., Defendants.

Civ. No. 92–3096.

United States District Court,
W.D. Arkansas, Harrison Division.

Dec. 3, 1993.

5. The motion by John Deere and Merchants and Farmers for leave to deposit funds into Court Registry is denied as moot.

Frederick S. Spencer, Mountain Home, AR, for plaintiff.

James D. Sprott, Elcan & Sprott, Harrison, AR, for defendants.

Brian Wood, Roy & Lambert, Springdale, AR, for Shelter.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This case is a rather standard and ordinary automobile accident case in which the plaintiff filed suit in this court claiming injuries and property damages as a result of a collision which occurred on U.S. Highway 62 on January 31, 1990.[1]

At the time of the accident, plaintiff was operating her vehicle in an easterly direction on U.S. Highway 62, following a vehicle owned by O'Reilly Automotive, Inc.,[2] operated by its employee, David D. Smith. Smith, desiring to reverse his direction, pulled into a private parking lot alongside the roadway and then re-entered the highway in front of the vehicle operated by plaintiff. A collision occurred, resulting in the claimed injuries and damages.

At the trial, plaintiff admitted, as she had in testimony in a deposition, that she was exceeding the speed limit immediately before the accident occurred. Based on that admission, the court instructed the jury that defendant claimed that plaintiff's negligence contributed to the accident and, thus, to her injuries and damages, and allowed the jury to consider that defense.

As permitted by Rule 49 of the Federal Rules of Civil Procedure, the court submitted the issues to the jury on special verdict. The jury answered specific interrogatories submitted by the court as follows:

**INTERROGATORY NO. 1:** DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE THAT DAVID SMITH WAS NEGLIGENT AND THAT SUCH NEGLIGENCE WAS A PROXIMATE CAUSE OF THE OCCURRENCE?

ANSWER:       X    (YES) _____ (NO)

11/3/93                    Clarence F. Kilgore, Jr.

(Date)                    (Signature of Foreperson)

**ANSWER THIS INTERROGATORY ONLY IF YOU HAVE ANSWERED "YES" TO INTERROGATORY NO. 1.**

**INTERROGATORY NO. 2:** DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE THAT PLAINTIFF WAS NEGLIGENT AND THAT SUCH NEGLIGENCE WAS A PROXIMATE CAUSE OF THE OCCURRENCE?

ANSWER:       X    (YES) _____ (NO)

11/3/93                    Clarence F. Kilgore, Jr.

(Date)                    (Signature of Foreperson)

1. It appears that plaintiff first filed suit in state court in 1990 and non-suited her lawsuit in March of 1992. The action was refiled in this court on November 2, 1992.

2. Plaintiff initially also sued O'Reilly Automotive, Inc. Shortly before the trial was scheduled to begin the court discovered that plaintiff and defendant O'Reilly were citizens of the State of Missouri both at the time the case was filed and when it was scheduled to be tried. The court pointed out to the attorneys for the parties that it, thus, did not have subject matter jurisdiction. At the beginning of the trial, plaintiff dismissed O'Reilly from the lawsuit.

IF YOU ANSWERED "YES" TO BOTH INTERROGATORY NO. 1 AND INTERROGATORY NO. 2, THEN ANSWER THIS INTERROGATORY.

INTERROGATORY NO. 3: USING 100% TO REPRESENT THE TOTAL RESPONSIBILITY FOR THE OCCURRENCE AND ANY INJURIES OR DAMAGES RESULTING FROM IT, APPORTION THE RESPONSIBILITY BETWEEN THE PARTIES WHOM YOU HAVE FOUND TO BE RESPONSIBLE:

ANSWER:

| | |
|---|---|
| DAVID D. SMITH | 60% |
| EVELYN COX DEWITT | 40% |
| TOTAL | 100% |

11/3/93

(Date)

Clarence F. Kilgore, Jr.

(Signature of Foreperson)

INTERROGATORY NO. 4: STATE THE AMOUNT OF ANY DAMAGES WHICH YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE WERE SUSTAINED AND/OR INCURRED BY EVELYN COX DEWITT IN CONNECTION WITH THE FOLLOWING ELEMENTS OF DAMAGE:

A) PROPERTY DAMAGE TO HER VEHICLE:
    ANSWER:                 AMOUNT:          $   800.00

B) ALL OTHER ELEMENTS OF DAMAGE CLAIMED:
    ANSWER:                 AMOUNT:          $50,000.00

11/3/93

(Date)

Clarence F. Kilgore, Jr.

(Signature of Foreperson)

---

As a result of the jury's verdict, the court, as required by Ark.Code Ann. § 16–64–122(b)(1), diminished the amount of the damages awarded by 40%, and entered judgment in favor of the plaintiff for $30,480.00.

Before the attorneys for the parties commenced closing arguments, the court advised counsel that they would not be permitted to argue to the jury or disclose to the jury how the jury's answer to Interrogatory No. 3 would affect the recovery. The court advised that it recognized that, in 1991, the Arkansas Legislature, in Act 663, amended the comparative fault statute by including subparagraph (d) as follows:

(d) In cases where the issue of comparative fault is submitted to the jury by an interrogatory, counsel for the parties shall be permitted to argue to the jury the effect of any answer to any interrogatory.

Counsel were told that the court had previously ruled, and was then ruling, that the amendment to the Arkansas Comparative Fault Statute was "procedural" in nature and that this court was not bound to follow it and declined to do so. The court pointed out that to do so would nullify what the court believed to be the beneficial effect of submitting cases such as this one to the jury on special verdict as permitted by Rule 49 of the Federal Rules of Civil Procedure.

After the jury had deliberated for approximately one and one-half hours, it sent the following written question to the court which was answered as shown:

DATE: 11/3/93       TIME: 1650

NOTE FROM JURORS

Will the answer to $ page 3 have any bearing on determining the amount awarded to plaintiff (sic). You should conscientiously answer the first 3 interrogatories based on your view of the evidence, without concern about the legal effect your answers will have.

Judge Waters

FOREPERSON: Clarence Kilgore

Now before the court is plaintiff's "Motion for Judgment Notwithstanding the Verdict" which, of course, since 1991 amendments to the Federal Rules of Civil Procedure, is properly denominated as a "Motion for Judgment as a Matter of Law." In the motion, the plaintiff contends that there was not sufficient evidence to support the jury verdict and that, in effect, the court should substitute its judgment for that of the jury by allowing "a verdict of $100,000.00 in this case without deduction of any amount for the alleged 'fault' of the plaintiff." Additionally, plaintiff's counsel argues that the court erred in preventing him from arguing to the jury the effect of its answer to the comparative negligence interrogatory, and apparently contends that this is additional grounds for the court to set aside the jury verdict and award plaintiff $100,000.[3]

Defendant's counsel responded to the motion, arguing that there was sufficient evidence to support the jury verdict. In respect to the plaintiff's contention that the court erred in preventing the jury from being advised of the effect of its answers to Interrogatory No. 3, defendant's counsel merely concludes, without citing a single case, that: "The effect of the court's ruling is one of procedure, not of substance, and was correct."

As indicated, the amendments to the Federal Rules of Civil Procedure merely changed the name of the motion, and the standard for application of Rule 50 remains the same. As stated in 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 at 599 (1971): "The standard for granting judgment notwithstanding the ver-

dict is precisely the same as the standard for directing a verdict." *Id.* (footnote omitted).

Thus, the test that this court must follow in ruling on the motion for judgment as a matter of law is well-stated in 9 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2524 (1971) as follows:

> The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party. In determining whether the evidence is sufficient the court is not free to weigh the evidence or to pass on the credibility of the witnesses or to substitute its judgment of the facts for that of the jury. Instead, it must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence.

*Id.* at 543–45 (footnotes omitted).

The Court of Appeals for the Second Circuit, in *Simblest v. Maynard*, 427 F.2d 1 (2d Cir.1970), stated the test that is to be applied in words that have been oft repeated:

> Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.

*Id.* at 4.

The Court of Appeals for this circuit, in *Jeanes v. Milner*, 428 F.2d 598 (8th Cir.1970) advised trial courts that a judgment notwithstanding the verdict should be sparingly granted because to do so deprives the parties of their right to a jury trial.

Utilizing the required standard, the court simply cannot substitute its judgment for that of the jury. As to the liability issue, as indicated, the plaintiff admitted that she

---

**3.** Plaintiff's counsel does not request a new trial. The court doubts that, even if it believed it committed error as claimed, that error would constitute grounds for the court entering a judgment as

a matter of law in the amount of $100,000 or any other amount. Instead, it appears, at most, that the matter should be retried, but plaintiff's counsel has not requested that.

was exceeding the speed limit immediately before the accident and the court concludes that reasonable minds could reach the conclusion that her excessive speed, under the circumstances, contributed to the accident and her claimed injuries to the extent that the jury found.

■ As to the damage issues, after hearing all of the evidence in the case, the court believes that a person would be entirely reasonable in concluding that plaintiff "badly overdid" her damage claims and her complaints and that the jury was justified in substantially discounting her claims as it obviously did. While it appeared that she thought she was badly injured, there was very little credible, objective evidence to support her claim.

In any event, plaintiff has not requested a new trial, and the court does not believe that the claimed deficiencies would, under any interpretation of the law, permit the court to do as plaintiff's counsel has requested and substitute its judgment for that of the jury by finding for plaintiff and awarding her a specific amount of damages.

■ As to the contention that the court erred in preventing the attorneys from advising the jury of the effect of its answer to the comparative negligence interrogatory, and the court's refusal to advise the jury of such effect after the jury requested same, the court is convinced it was correct. Prior to the amendment by the Arkansas Legislature to the comparative negligence statute, the law of almost every jurisdiction including Arkansas, was that it was error to tell the jury of the effect of its answers to questions submitted by special verdict. For a discussion of and a collection of the cases so holding, see this court's opinion in *Brewer v. Jeep Corp.*, 546 F.Supp. 1147 (W.D.Ark.1982), affirmed 724 F.2d 653 (8th Cir.1983).

The issue then becomes whether this court was bound by the 1991 amendment to the Arkansas Comparative Fault Statute discussed above. The court does not believe that it is. In the first place, Rule 49 of the Federal Rules of Civil Procedure specifically authorizes a trial court to submit matters on special verdict. That is a "procedural" rule

and directs that courts, when utilizing Rule 49, "shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue."

In this case, the jury was asked a simple question, and that was for it to fix what it believed the evidence indicated was the relative degree of fault of the parties. In order for the jury to carry out its sworn duty to make that determination, it was not necessary for the court to tell it of the legal effect of such determination and, in fact, doing so would undoubtedly nullify the effect of and reason for submitting a case to a jury on a special verdict. The jury's "job" is to determine what it believes to be the "facts" and it then becomes the duty of the court to apply the law to that determination.

In the words of Judge Lay in *Chicago, R.I. & P.R. Co. v. Speth*, 404 F.2d 291 (8th Cir. 1968):

> Although the jury system may not provide a means to achieve faultless justice, it is still the best instrumentality our democratic society has devised to decide an adversary proceeding. As such, a jury must be totally immune from any possible coercion or subtle pressure to decrease its decided verdict by reason of the court's interrogation and direction to reconsider its findings.... It is for similar reasons that a jury in making special findings is best directed not to concern themselves about whether their answers will be favorable to one party or the other or what the final result of a lawsuit may be.

*Id.* at 295.

Thus, the court is convinced that it followed the law in this circuit in directing counsel not to disclose to the jury the effect of its answers to Interrogatory No. 3 and in declining to tell the jury the effect of such answers when the court was asked by a note from the jury foreperson. To advise the jury of the effect, would have nullified the court's reason for submitting the matter to the jury on special verdict. The question asked in Interrogatory No. 3 was a "fact" question and advising the jury of the effect of their answer would interfere with the jury's fact-finding function. The jury's duty was to find

the "facts" not to apply the law to those facts. That is the judge's job.

Not only is the court convinced that it would be harmful to the jury process for it to be advised of the legal effect of answers that it gives to specific questions submitted by the court, the court is equally convinced that the amendment to the Arkansas Comparative Fault Statute does not require that the court do that.

■ The court recognizes that it has not, in recent years, been entirely "fashionable" to attempt to place issues such as these into substantive or procedural pigeonholes and to decide them on that basis solely, but the court believes that the reasons for and reasoning employed in applying such test still have merit. How a jury is instructed, and what is permitted in closing arguments, and how jury questions to the court are answered, are clearly "procedural." It has to do with how the court runs its business. As indicated, it is covered by Rule 49 of the Federal Rules of Civil Procedure and the Advisory Committee's note on this rule states that: "The Federal Court's are not bound to follow state statutes authorizing or requiring the court to ask a jury to find a special verdict or to answer interrogatories." (citing cases). The court believes that it would naturally follow that federal courts are also not bound to follow state statutes such as the one at issue here.

That is also the result reached in most courts that have faced this issue. In 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2502 at (1971) it is said:

> The courts have uniformly reached the result predicted by the Advisory Committee and have refused to regard state law as controlling on the submission of special verdicts and interrogatories. State law does not govern whether to use a general verdict or a special verdict, or what questions to submit if these procedures are used, or the form of the questions submitted, or how the jury is to be instructed, or the effect of inconsistencies between a general verdict and a special interrogatory, or

any other detail of the special verdict and interrogatory practice.

*Id.* at 487 (citing cases in respect to each).

For federal courts, or any court for that matter, to follow the amendment in question would totally and completely nullify the reason for and the effect of giving the jury rather simple questions to answer to decide tough cases, without allowing them to become concerned about the effect of their answers and to thus tailor their answers to fit a particular or desired result.

Prior to the Arkansas Legislature becoming involved, the Arkansas Supreme Court, in *Argo v. Joe Blackshear*, 242 Ark. 817, 416 S.W.2d 314 (1967) described the value of special verdicts as follows:

> This pointedly illustrates the value of interrogatories. Jurors honestly answer four relatively simple questions, not knowing the legal effect will be contrary to their personal wishes. Additionally, this situation justifies the rule that for the judge to specifically inform the jurors as to the effect of their answers on the ultimate judgment is reversible error.

In this case, if the jury, in asking the question that it asked the court, intended to tailor its answers so that a particular result would be reached, it was wrong. If the individual jurors collectively believed that the plaintiff was 40% responsible for the accident, but it still intended to give the plaintiff something other than 60% of the damages that it believed she suffered, it would have been contrary to the law of Arkansas, and the court's decision to submit the case on interrogatories was, thereby, vindicated.

The Arkansas Legislature, of course, has the power and right to, for whatever reason and to satisfy whatever constituency, in effect invalidate Rule 49 of the Arkansas Rules of Civil Procedure or at least make it useless to utilize it in Arkansas courts,[4] but, in so doing, it may not also nullify and make useless Rule 49 of the Federal Rules of Civil Procedure.

An order denying the motion for judgment as a matter of law will be entered. Since

---

4. Rule 49 of the Arkansas Rules of Civil Procedure is substantially the same as the federal rule.

plaintiff has not moved for a new trial, no conditional ruling is necessary as required by Rule 50 where alternative motions are made.

### ORDER

On this <u>2nd</u> day of December, 1993, upon consideration of the Rule 50 motion (denominated by plaintiff's counsel as a motion for judgment notwithstanding the verdict) the court finds, for the reasons set forth in a memorandum opinion filed contemporaneously herewith, that said motion should be and it hereby is denied.

IT IS SO ORDERED.