Wendell CAMPBELL *v.* ENTERGY ARKANSAS, INC.

05-14                                                    211 S.W.3d 500

Supreme Court of Arkansas
Opinion delivered June 30, 2005

*Howell, Trice, Hope & Files*, by: *Jason Files*, and *Eubanks, Baker & Schulze*, by: *J. G. Schulze*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Scott J. Lancaster* and *Martin W. Kasten*, for appellee.

ANNABELLE CLINTON IMBER, Justice. In this case, we granted a petition for review from a decision by the Arkansas Court of Appeals that reversed a jury's verdict in favor of Appellee Entergy Arkansas, Inc. *Campbell v. Entergy Arkansas, Inc.*, 89 Ark. App. 91, 200 S.W.3d 473 (2004). The matter arises out of a lawsuit filed by Appellant Wendell Campbell against Entergy Arkansas, Inc. (Entergy) seeking damages for injuries he sustained from an electric shock that occurred when he came into contact with an Entergy guy wire. As there has been no challenge to the sufficiency of the evidence in this case, a long recitation of the facts is not necessary. On August 15, 2001, Mr. Campbell came into contact with an Entergy guy wire while doing yard work at his residence and suffered an electrical shock. Mr. Campbell alleged in his complaint that his injuries were the result of Entergy's negligent construction and maintenance of the electrical wire. In its answer, Entergy denied fault for Mr. Campbell's injuries and asserted that his injuries were proximately caused by his own conduct.

The case was tried before a jury and, following instructions by the circuit court and closing arguments by counsel, the court submitted the case to the jury on a general verdict. The jury then retired to deliberate. After deliberating approximately two and

one-half hours, the jury informed the circuit court that it was unable to reach a verdict. As a result of this disclosure, the circuit court instructed the jury in accordance with AMI–Civ.4th 2303, commonly known as the "dynamite" instruction, and the jury again retired to deliberate. Eventually, the jury sent a note to the circuit court that asked the following question: "What verdict form do we use for a fifty-fifty verdict?" The court conferred with counsel and sent a written response: "The Court needs clarification. Is the question that you are deadlocked 50% to 50%, or 6 to 6, or have you determined that both the plaintiff and defendant are each 50% responsible for the accident?" The jury promptly returned the note, indicating, "This is our position" with a circle drawn around the second half of the note. The court responded by referring the jury to the AMI instruction on comparative fault, AMI–Civ.4th 2101, but the jury returned an additional note stating, "The way these forms are typed, there is no way to compare percentages." The court then responded with a note saying, "You are not required to assess percentages of negligence on the verdict form itself, but to use those percentages you reached to choose the correct verdict according to 2101." After a third and final question from the jury,[1] the court decided, over the objection of Mr. Campbell's counsel, to resubmit the case to the jury on special-interrogatory verdict forms pursuant to AMI–Civ.4th 2302.[2] The jury ultimately returned answers to the special interrogatories, finding that each party was fifty percent responsible for the accident. The circuit court then entered judgment in favor of Entergy based upon the jury's special-interrogatory verdict.

---

[1] This question has not been included in the record.

[2] The special interrogatories submitted to the jury were as follows:

1. Do you find from a preponderance of the evidence that there was negligence upon the part of Entergy Arkansas which was a proximate cause of any damages sustained by Wendell Campbell?

2. Do you find from a preponderance of the evidence that there was negligence on the part of Wendell Campbell which was a proximate cause of his own damages?

3. If you have answered "Yes" to Interrogatories 1 and 2, then answer this Interrogatory: Using 100% to represent the total responsibility for the occurrence and any injuries or damages resulting from it, apportion the responsibility between the parties whom you have found to be responsible.

Mr. Campbell appeals that verdict, arguing that the circuit court erred when it submitted the issue of comparative fault to the jury by special interrogatories without affording him the opportunity to argue the effect of answers to those interrogatories as provided by Ark. Code Ann. § 16-64-122(d) (Supp. 2003). The Arkansas Court of Appeals reversed the verdict, and Entergy filed a petition for review, which we granted pursuant to Ark. R. Sup. Ct. 1-2(e) (2005). We agree that the procedure used by the circuit court violated section 16-64-122(d). Therefore, we reverse and remand.

Mr. Campbell's sole argument on appeal is that the circuit court erred when it modified the instructions from a general-verdict form to special-interrogatory verdict forms, thereby depriving him of his right to argue the effect of answers to the interrogatories as allowed by section 16-64-122(d). That statutory provision states, "In cases where the issue of comparative fault is submitted to the jury by an interrogatory, counsel for the parties shall be permitted to argue to the jury the effect of an answer to any interrogatory." Ark. Code Ann. § 16-64-122(d). According to Mr. Campbell, the circuit court committed prejudicial error by failing to give him the benefit of section 16-64-122(d).

In support of his argument, Mr. Campbell suggests that our decision in *Argo v. Blackshear*, 242 Ark. 817, 416 S.W.2d 314 (1967) is instructive. In *Argo*, which involved a wrongful-death action arising when a pedestrian was hit and killed by a car, the case was originally submitted to the jury on four special interrogatories. The jury returned answers to the interrogatories, finding that the driver and pedestrian were equally responsible but also fixing damages at $18,000. Counsel for the plaintiff-appellee requested that the court ascertain if it was the intent of the jurors for the plaintiffs not to recover. In response to questioning by the court, the jury responded that they wanted the plaintiff to recover $18,000. *Id.* The court subsequently withdrew the special-interrogatory verdict forms and resubmitted the case to the jury on a general-verdict form. The jury then returned a general verdict in favor of the plaintiff in the amount of $18,000. *Id.* The trial court entered judgment on the general verdict. We reversed the entry of judgment, stating:

> The trial court committed reversible error. The cause was submitted to the jury under Ark. Stat. Ann. § 27-1741.2 (Repl. 1962), being submitted on 'written questions susceptible of categorical or

other brief answer . . . .' Collectively, the answers constitute a special verdict. If the answers are consistent with the law and the evidence, and if a poll of the jury reflects the answers to represent the findings of the jury, they must be accepted as the verdict in the case. The interrogatories, the answers, and the poll of the jury meet all these prerequisites. It then becomes the duty of the trial judge to enter the verdict. That verdict remains, unless of course it is subsequently set aside on statutory grounds.

*Id.* at 819, 416 S.W.2d at 315. Notably, the decision in *Argo* does not control the disposition of the instant case because the jury in that case had already returned with a valid verdict before the trial court resubmitted the case. As such, the error at issue in *Argo* was the trial court's failure to enter judgment on the verdict returned by the jury on special interrogatories. In this case, the jury did not return a general verdict before the case was resubmitted to the jury on special-interrogatory verdict forms. Consequently, the rationale set out in *Argo* is not helpful to our analysis.

Mr. Campbell also cites *Sun Mut. Ins. Co. v. Dudley*, 65 Ark. 240, 45 S.W. 539 (1898), as support for the proposition that a trial court commits error by withdrawing a general-verdict instruction and resubmitting the case to the jury on special interrogatories. In *Sun*, the plaintiffs sued to enforce an insurance policy, and the case was originally submitted to the jury on two special interrogatories. After some deliberation, the jury returned and announced that the jurors could not agree on the answers to the interrogatories. The trial court withdrew the special-interrogatory verdict forms, and the jury eventually returned with a general verdict in favor of the plaintiff. Although this court reversed the verdict on other grounds, we nonetheless held that the trial court erred in withdrawing the special interrogatories. The *Sun* court specifically noted that the trial court should not have withdrawn the interrogatories from the jury after the jurors announced that they could not agree on the answers, but the *Sun* court then stated, "We do not, however, decide that the court did or did not commit a reversible error in withdrawing the same."

Our court has specifically sanctioned the application of the harmless-error doctrine, which in the civil context is error unaccompanied by prejudice, in the only case to date that analyzes Ark. Code Ann. § 16-64-122(d). Ark. R. Civ. P. 61 (2005); *Rathbun v. Ward*, 315 Ark. 264, 866 S.W.2d 403 (1993). In that case, the appellant had been involved in a two-car accident in which one

person was killed. In the resulting lawsuit, the drivers of both cars, Rathbun and Richards, were named as defendants. At trial, Rathbun argued that section 16-64-112(d) allowed her to argue the effects of contribution among joint tortfeasors, but the circuit court ruled that the statute only allowed argumentation related to comparative fault. We agreed that the statute did not cover arguments related to contribution among joint tortfeasors and affirmed the circuit court. Furthermore, the court approved the application of a harmless-error analysis to errors relating to section 16-64-122(d), stating

> We observe that even if the trial court had erred in denying Rathbun the chance to argue the effects of contribution, such an error would be rendered harmless by the jury's apportionment of fault. The jury apportioned 75% of fault to Rathbun and 25% of fault to Richards. The jury obviously felt Rathbun was responsible for the majority of fault, thus they would not have been persuaded to reapportion the fault based on principles of contribution.

*Id.* at 274, 866 S.W.2d at 409.

Based on our court's decisions in *Sun Mut. Ins. Co. v. Dudley, supra,* and *Rathbun v. Ward, supra,* it is clear that the circuit court erred in resubmitting the case on special-interrogatory verdict forms without allowing Mr. Campbell the opportunity to argue to the jury the effects of answers to the interrogatories, pursuant to Ark. Code Ann. § 16-64-122(d). The issue, however, is whether that error can be considered prejudicial. We are unable to conclude that the error was harmless in this case.

Arkansas Rule of Civil Procedure 61, entitled Harmless Error, states

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Ark. R. Civ. P. 61 (2005). This court has stated, "It is a fundamental principle of appellate procedure which is universally recognized and

applied that a party cannot assign as error that which is not prejudicial to him; and harmless error, that is error unaccompanied by prejudice or injury, is not ground for reversal." *Keathley v. Yates*, 232 Ark. 473, 475, 338 S.W.2d 335, 336 (1960) (citing 5A C.J.S. Appeal & Error § 1676, p. 677). Thus, unless the appellant demonstrates prejudice accompanying error, we will not reverse. *Peoples Bank and Trust, Co. v. Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986).

In the instant case, Ark. Code Ann § 16-64-112(d) grants parties the right to argue to the jury the effects of its answers to any interrogatories involving comparative fault. Though our opinion in *Rathbun v. Ward, supra,* includes dicta indicating that the violation of this statute in that case was harmless error, we are unable to determine that the error in this case was similarly harmless. Of special significance in the *Rathbun* court's determination of harmless error was that the jury's apportionment of fault was 75% for Rathbun and 25% for Richards. The court noted that such an apportionment indicated that "[t]he jury obviously felt Rathbun was responsible for the majority of fault." *Rathbun v. Ward*, 315 Ark. at 274, 866 S.W.2d at 409. In contrast, the jury's apportionment of fault in this case is not as unbalanced. Here, the jury apportioned 50% of the fault of the accident to Mr. Campbell and 50% to Entergy. Even the slightest tipping of those percentages in favor of Mr. Campbell would have resulted in a judgment against Entergy. Additionally, the jury was deadlocked at one point, six to six, and even upon reaching a verdict on the special interrogatories, only nine jurors — which is the minimum number needed for a verdict — were in agreement. Under such close circumstances, we conclude that the circuit court's denial of Mr. Campbell's right to argue the effects of answers to the interrogatories was prejudicial.

The circuit court's error is particularly injurious in this case, where Mr. Campbell could not know at closing arguments that special-interrogatory verdict forms would be used. In *Rathbun*, though the appellant was unable to make arguments on joint-tortfeasor contribution, he was at least aware prior to closing argument that the case would be submitted on special interrogatories, and his counsel could draft a closing argument accordingly. In this case, Mr. Campbell was not given that opportunity. Moreover, if, as in *Sun*, the case had been originally submitted on special-interrogatory verdict forms and then later changed to a general-verdict form, the parties presumably could have already argued the effects of answers to those special interrogatories, and

section 16-64-122(d) would not be implicated. This is not to say that the resubmitting of the case might not still be in error; only that the error would not implicate the parties' statutory rights under 16-64-122(d).

Entergy suggests that the verdict should be upheld because "the jury was clear as to their finding of a fifty-fifty split as to each party's negligence." Indeed, on this point there can be no argument. Throughout its protracted dialogue with the judge, the jury repeatedly indicated its finding that the parties were each 50% responsible for the accident. At one point during the deliberations, the jury sent a note to the judge asking, "What verdict form do we use for a 50/50 verdict?" In response to the court's request for clarification, the jury indicated that its position was that both plaintiff and defendant were 50% responsible for the accident. The court correctly advised the jury to consult the AMI instruction on comparative fault, AMI–Civ.4th 2101.

█ While the dialogue between the jury and the judge does suggest that the jury believed both Mr. Campbell and Entergy were equally to blame for the accident, the dialogue does *not* unequivocally establish that the jury understood the effects of its answers to the interrogatories, which is the essence of section 16-64-122(d). The fact that the jury remained confused on which general-verdict form to use even after hearing the AMI instruction on comparative fault, as well as an explanation of comparative fault in Entergy's closing statement, suggests that the jury did not understand the effects of its answers to the special interrogatories. Under these circumstances, we conclude that Mr. Campbell's inability to argue the effects of the jury's answers to the interrogatories was prejudicial.

█ As a final note, the opinion by the Arkansas Court of Appeals discloses that the court of appeals attempted to certify the case to our court because of a potential conflict between Ark. Code Ann. § 16-64-122(d) and Rule 49 of the Federal Rules of Civil Procedure, which is substantially identical to Rule 49 of the Arkansas Rules of Civil Procedure. *Campbell v. Entergy Arkansas, Inc.*, 89 Ark. App. 91, 200 S.W.3d 473 n. 1 (2004). Entergy subsequently addressed the issue in its supplemental brief and argued that the statute impermissibly infringes on this court's power under Amendment 80 to the Arkansas Constitution to prescribe the rules of pleadings, practice, and procedure for all

Arkansas courts.[3] When the constitutionality of a statute is challenged, the Attorney General of this state must be notified and is entitled to be heard. Ark. Code Ann. § 16-111-106(b) (Repl. 1987); *see also Landers v. Jameson,* 355 Ark. 163, 132 S.W.3d 741 (2003). The purpose behind the notification to the Attorney General is to assure a "fully adversary and complete adjudication" of the constitutional issue. *Arkansas Dept. of Human Services v. Health,* 307 Ark. 147, 149, 817 S.W.2d 885, 886 (1991). This has not been done in this case. We must therefore decline to address Entergy's constitutional challenge.

Reversed and remanded.

---

[3] We note that the constitutional argument was neither developed nor ruled upon by the circuit court.