DR. PEPPER BOTTLING CO. of Paragould *v.*
Don FRANTZ d/b/a Frantz Distributing

92-133                                                    842 S.W.2d 37

Supreme Court of Arkansas
Opinion delivered November 23, 1992

138

*Wright, Lindsey and Jennings*, for appellant.

*Casey Jones, Ltd.*, by: *Casey Jones*; and *McHenry & Mitchell*, by: *Robert McHenry*, for appellee.

STEELE HAYS, Justice. Three points are raised by this appeal: whether a distributorship agreement between appellant Dr. Pepper Co. of Paragould, Inc. (Dr. Pepper) and appellee Don Frantz (Frantz) is subject to the Arkansas Franchise Practices Act; whether Dr. Pepper's termination of the distributorship was without good cause and in violation of statutory provisions; and whether the evidence supports damages of $100,000 awarded to Frantz. Answering those questions in the affirmative, we affirm.

On November 17, 1986, Frantz and Dr. Pepper entered into a contract entitled "Distributorship Agreement," appointing Frantz to distribute exclusively throughout some eleven Arkansas counties the beverage products franchised by Dr. Pepper. Frantz agreed to carry Dr. Pepper's entire line of products on its trucks, to refrain from selling any beverages similar to the products of Dr. Pepper, to comply with all policies of Dr. Pepper, including dress code, standards of merchandizing and the like. Frantz was to distribute beverage to retail outlets throughout the territory assigned to him at prices set by Frantz and to distribute at retail through coin-operated vending machines. No provision in the agreement obligated Frantz to maintain a particular place of business, a focal point of this dispute.

Frantz operated four trucks and two vans and rented warehouse space in Little Rock. Later, in 1989, Frantz constructed a warehouse, investing about $100,000 in the property. A representative of Dr. Pepper looked at the site and thought it "a good idea and a good investment." Frantz maintained regular hours, keeping the doors open until six or seven p.m. Frantz distributed approximately one thousand five hundred cases of beverage each week, primarily to retail outlets but some sales

were made to customers at the warehouse where products were on display.

In December 1988 Dr. Pepper wrote to Frantz stating that its products were being distributed in less than a third of the outlets of his territory, whereas he was obligated to secure and maintain regular distribution in a minimum of 65% of the outlets. Frantz was given until March 31, 1989, to correct the deficiency.

In September 1989 Frantz received a letter from Dr. Pepper informing him that because Dr. Pepper had recently acquired the 7-Up Bottling Company of Little Rock and Mountain Valley Water of Central Arkansas, "we must exercise our option to terminate your distributor agreement, effective immediately" upon thirty days notice.

Frantz brought this action against Dr. Pepper alleging the termination of the distributorship was in violation of the Arkansas Franchise Practices Act. The case was tried, Dr. Pepper moved for a directed verdict at the end of the plaintiff's proof and again at the close. Both motions were denied and the jury returned a verdict for Frantz for $100,000. Dr. Pepper then moved for a judgment notwithstanding the verdict. That, too, was denied and this appeal followed.

I

The Circuit Court Erred In Finding That There Was A Legally Sufficient Evidentiary Basis For The Jury's Finding That Frantz Was A Franchisee As That Term Is Defined By The Arkansas Franchise Act

A trial court may enter judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict of the jury, and the moving party is entitled to judgment as a matter of law. *Dedman* v. *Porch*, 293 Ark. 571, 739 S.W.2d 685 (1987). On appeal from the denial of a motion for a judgment notwithstanding the verdict we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf the judgment was entered. *McCuistion* v. *City of Siloam Springs*, 268 Ark. 148, 594 S.W.2d

233 (1980).[1]

The Arkansas Franchise Practices Act [Act 355 of 1977, Ark. Code Ann. §§ 4-72-201 — 210 (1987)] provides remedies for persons whose rights as franchisees have been terminated without good cause. A franchise is defined by the act as

> a written or oral agreement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic within an exclusive or nonexclusive territory, or to sell or distribute goods or services within an exclusive or nonexclusive territory, at wholesale, retail, by lease agreement, or otherwise.

Ark. Code Ann. § 4-72-202(1).

> The act applies only to a franchise

> entered into, renewed, or transferred after March 4, 1977, the performance of which contemplates or requires the franchise to establish or maintain a place of business within the State of Arkansas.

Ark. Code Ann. § 4-72-203.

"Place of business" is defined as

> a fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services.

Ark. Code Ann. § 4-72-202(6).

From the foregoing excerpts, Dr. Pepper argues that the act applies only to agreements "the performance of which contemplates or requires the franchise to establish or maintain a place of business in Arkansas," that is to say, "a fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods." *See* § 4-72-202(6).

Dr. Pepper relies on *Bridgman* v. *Cornwell Quality Tools*

---

[1] Whether the construction of the agreement and applicability of the statutes should have been decided by the trial court, have not been raised by either party. *See Duvall* v. *Massachusetts Indemnity & Life Insurance Co.*, 295 Ark. 413, 748 S.W.2d 650 (1988).

*Co.*, 831 F.2d 174 (8th Cir. 1987), *George R. Darche Associates v. Beatrice Foods Co.*, 538 F. Supp. (D.N.J.), affirmed 676 F.2d 685 (3rd Cir. 1981) and *Carlo C. Celardi v. Miller Brewing Co.*, 421 F. Supp. 233 (D.N.J. 1976). But those cases are neither controlling nor persuasive, given material differences. Bridgman operated entirely from a van and made no pretense of selling from a fixed location where Cornwell's products were displayed. The trial court found that neither Bridgman's van nor his home constituted a place of business and the appeals court deferred to those factual findings.

The *Darche* case has marked differences from the case before us. Darche maintained no inventory and had no authority to set prices, whereas Frantz determined the price. Darche was, in effect, simply a soliciting agent and all orders were considered simply "an offer to purchase until accepted by [Beatrice]." Products were delivered directly to the purchaser by the manufacturer and not by the soliciting agent. Darche undertook no duty to promote sales.

The *Celardi* case involved a dispute between a New Jersey beer distributor, Celardi, and Miller Brewing Company. Celardi sued Miller alleging a breach of its distributorship in violation of New Jersey's Franchise Practices Act. This act, like ours, applies only to franchises the performance of which contemplates or requires the franchisee to establish or maintain a place of business with the State of New Jersey. But, unlike our act, the New Jersey act requires a minimum level of gross sales attributable to the goods of the franchisor. More important, § 56:10 -3(f) of that act specifically excludes "a warehouse, a place of storage, a residence or a vehicle" from the definition of "place of business." Miller argued the exclusion of warehouses, etc., was indicative of a legislative intent to exclude alcoholic beverages from the coverage of the franchise act. The court rejected the contention that § 56:10 -3(f) was intended to exclude particular industries or ·substantial operations like Celari's from the protection of the act in these terms:

> This is especially so when one considers the strong public policy in favor of protection expressed by the act. *See Shell Oil Co. v. Marinello*, 63 N.J. 402, 409, 307 A.2d 598, 602 (1973), *cert. denied*, 415 U.S. 920 (1974).

Nor do we read the *Celardi* case as the appellant does to support the view that the issue of what is contemplated in terms of performance is resolved "solely by reference to the contract." Whether that is implicit in the opinion is at best debatable; it is not, however, explicit, and if the opinion seems to focus largely on the provisions of the agreement, that is doubtless influenced by the fact that the question before the court was whether a preliminary injunction should issue anticipatory to a trial.

Thus, Dr. Pepper posits the issue to be decided as not whether Frantz actually established a place of business in Arkansas where products of Dr. Pepper were displayed and sold- a premise not easily sustainable in view of the testimony and the verdict- but whether the agreement required that Frantz would display and sell Dr. Pepper products from a fixed location, or contemplated that he would do so.

We readily concede the agreement contains no specific provision relative to a fixed location, but that hardly ends the matter. The words "contemplates or requires" are modifiers of the word "performance" and they introduce a wider scope to our inquiry. Since they are paired in the disjunctive, and "contemplates" is the more encompassing of the two, that connotes greater latitude in how duties might be interpreted under the agreement. Nothing in the agreement prohibits Frantz from selling at a fixed location and, indeed, one might ask how he could be expected to supply a minimum of 65 % of the retail outlets in eleven counties, including Pulaski and Jefferson, with a fleet of six vehicles handling 1,500 cases per week, without maintaining a facility of some kind. True, the agreement makes no mention of such and certainly does not require a place where goods are displayed and sold, but neither does it prohibit such a place. Frantz testified to the presence of both and we find nothing in the record suggesting that what he evidently contemplated in the performance of the agreement was ever challenged by Dr. Pepper, the author of the agreement.

In resolving to affirm, we are influenced not only by the language in our statutes, but by the fact that the legislature designed the act for the protection of the public and aired its purpose in the emergency clause:

. . .that some franchisors have, without good cause

and to the great prejudice and harm of the citizens of the State of Arkansas, cancelled existing franchise agreements and that other such cancellations are threatened; and that only by the immediate passage of this Act can this situation be remedied and it is therefore necessary in the public interest to define the relationship and responsibilities of franchisors and franchisees in connection with franchise agreements.

■■ One abuse the act was intended to remedy is wrongful terminations. *See* 62B Am. Jur. 2d *Private Franchise Contracts* § 292 (1990). Such contracts should be liberally construed to carry out the legislative goal. *Id.* § 304. In *Bush* v. *National School Studios, Inc.*, 407 N.W.2d 883 (Wisc. 1987), the Supreme Court of Wisconsin gave a liberal construction to its newly adopted franchise act:

In determining whether a dealership exists within the scope of a state franchise regulation, courts should not focus solely on identifying the tell-tale trappings of the traditional franchise; rather, courts should consider the overriding principle of whether the business' status is dependent upon the relationship with the grantor for its economic livelihood. If such dependency does exist, the business would be extremely vulnerable if terminated without good cause and adequate notice.

■ We conclude that the trial court did not err in denying the motion for judgment notwithstanding the verdict.

## II

The Circuit Court Erred In Finding That There Was A Legally Sufficient Evidentiary Basis For The Jury's Finding That Frantz Sustained Damages In the Amount of $100,000

Dr. Pepper contends that recovery of damages may not rest on speculation or conjecture, *Duncan* v. *Foster*, 271 Ark. 591, 609 S.W.2d 62 (1980), and must be proven with reasonable certainty, *Traylor* v. *Huntsmen*, 253 Ark. 704, 488 S.W.2d 30 (1972). Frantz's proof of damages was provided by Dr. Ralph Scott, an economist, who placed a value of between $89,000 and $164,000 on the franchise Frantz assertedly held in central Arkansas. Dr.

Pepper faults that testimony on the ground that Frantz still has the capacity to generate income and was in fact still operating; and moreover that, Frantz's losses were overstated inasmuch as Dr. Scott included in his calculations moneys generated from products being sold by Frantz not supplied by Dr. Pepper. Finally Dr. Pepper points out that Dr. Scott valued the enterprise as of the end of 1988, when more than 90% of Frantz's sales were attributable to Dr. Pepper, which testimony ignored the operation for the three quarters of 1989 leading up to termination. Dr. Pepper urges that this analysis was too remote to support the award.

Appellee's response to the omission of Frantz's experience in 1989 is that such inclusion would have increased the amount of damages sustained, and further that testimony by Frantz was he had invested $100,000 in the acquisition of a warehouse and was damaged well in excess of $100,000 by the breach. We note, too, that Scott did some downward revision in his estimates in view of Frantz's testimony that a portion of his sales were from products other than Dr. Pepper.

We cannot say the appellant has shown us that the proof of damages was too speculative to go to the jury. The jury instructions are not abstracted, which limits our understanding of the issue and increases our dependence on the trial court. Moreover, we have recognized some latitude in this area and have not insisted on exactness of proof. *Lancaster v. Schilling Motors, Inc.* 299 Ark. 365, 772 S.W.2d 349 (1989). If it is reasonably certain that some loss has occurred it is enough they can be stated only proximately. *Jim Halsey Co. v. Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985).

### III

The Circuit Court Erred In Finding That There Was A Legally Sufficient Evidentiary Basis For The Jury's Finding That Frantz Was Terminated Without Good Cause, Without Statutory Notice, And Without An Opportunity To Cure His Deficiencies

Dr. Pepper contends there is no substantial evidence that Dr. Pepper terminated Frantz without good cause. "Good cause" is defined under the Franchise Act as including the failure

by the franchisee to comply substantially with the requirements imposed under the agreement. Dr. Pepper submits it produced overwhelming evidence of good cause to terminate. But that issue was clearly one for the jury, considering there was evidence from which the jury could readily find that termination was attributable to Dr. Pepper having acquired 7-Up Bottling Company rather than from the actions of Dr. Frantz.

For the reasons stated, the judgment is affirmed.