Angela Renee RATHBUN *v.* Deborah WARD, Individually, and as Next Friend of Shannon McDaniels, Apolonio Paul Hernandez and Martha Sue Shepley, Wylladean Richards

93-412                                          866 S.W.2d 403

Supreme Court of Arkansas
Opinion delivered December 6, 1993

*Jones, Hixson & Jones*, by: *Kenneth S. Hixson*, for appellant.

*Odom, Eliott, Winburn & Watson*, by: *J. Timothy Smith*, for appellee Deborah Ward.

*Boyce R. Davis Associates*, by: *Boyce R. Davis*, for appellees Hernandez and Shepley.

*Davis, Cox & Wright*, by: *Don A. Taylor*, for appellee Richards.

DONALD L. CORBIN, Justice. A Washington County Circuit Court jury assessed 75% of the fault against appellant, Angela

Renee Rathbun, and 25% of the fault against separate appellee, Wylladean Richards, for injuries sustained by passengers in Rathbun's automobile when Richards' vehicle rear-ended Rathbun's vehicle. Rathbun presents seven issues on appeal. We find no error and affirm.

## I. INSUFFICIENT EVIDENCE OF NEGLIGENCE

Rathbun contends the trial court erred in refusing to grant a directed verdict or judgment notwithstanding the verdict and abused its discretion in failing to grant a new trial as there was substantial evidence to support the jury's finding of Rathbun's negligence. Rathbun argues there was no evidence that she was negligent because she was the driver of the forward vehicle and had the superior right to leave the highway to make a turn on an intersecting driveway.

ARCP Rule 59(a) provides that a new trial may be granted when the verdict or decision is clearly contrary to the preponderance of the evidence. Where such a motion for new trial is denied, the test on appeal is whether there is substantial evidence to support the jury verdict. *Gipson* v. *Garrison*, 308 Ark. 344, 824 S.W.2d 829 (1992). Similarly, where a denial of a motion for directed verdict or a motion for judgment notwithstanding the verdict is denied, we must also determine whether the verdict is supported by substantial evidence. *Mankey* v. *Wal-Mart Stores, Inc.*, 314 Ark. 14, 858 S.W.2d 85 (1993); *Dr. Pepper Bottling Co.* v. *Frantz*, 311 Ark. 136, 842 S.W.2d 37 (1992).

In determining the existence of substantial evidence, we view the evidence in the light most favorable to the party on whose behalf the judgment was entered and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Mankey*, 314 Ark. 14, 858 S.W.2d 85; *Gipson*, 308 Ark. 344, 824 S.W.2d 829; *Frantz*, 311 Ark. 136, 842 S.W.2d 37. In reviewing the evidence, the weight and value to be given the testimony of the witnesses is a matter within the exclusive province of the jury. *Pineview Farms, Inc.* v. *A. O. Smith Harvestore, Inc.*, 298 Ark. 78, 765 S.W.2d 924 (1989).

The evidence reveals that on August 21, 1991, Rathbun was operating her Ford Fiesta on State Highway 170 toward Devil's Den State Park. Four teen-aged friends were passengers in her

car. As she slowed her vehicle to make a left turn, it was rear-ended by Richards' pickup truck. One of Rathbun's passengers was killed, and another sustained head injuries. The site of the accident was on an up-grade in the highway that curves to the right.

Rathbun testified that she was driving 30 to 35 miles per hour up a mountain and came around a curve to the right. There was a pedestrian on the left side of the road. Rathbun did not know the pedestrian, but one of the passengers recognized him and said, "Stop. There's Todd." Rathbun testified that she down-shifted into second gear and activated her left turn signal. She stated that she did not slow the car abruptly although she may have touched her foot on the brake pedal. She testified she did not look in her rear-view mirror. The next thing Rathbun remembered was the rear of her car being struck by Richards' pickup. Rathbun stated that only three or four seconds elapsed from the time she began slowing down to the time of impact.

The passenger sitting behind Rathbun was Wendy Bigpond. She testified that as they went around the curve, they saw a friend on the side of the road and someone said, "let's stop." She testified the Rathbun vehicle started slowing down and was struck from the rear.

The front passenger was Justin Hamby. He testified that they were driving toward Devil's Den and saw Todd Hanks on the side of the road. He recounted they were looking for a place to pull off the road to stop and give Hanks a ride. Hamby testified that Rathbun's vehicle was not stopped at the time of impact. He was not sure how fast the car was going at the time of impact but said he knew the car was still slowing down. He estimated the Rathbun vehicle was traveling about five miles per hour when the impact occurred.

Richards testified that she had driven that same stretch of State Highway 170 for 15 years since she lived a few miles farther down the road from the point where the accident occurred. She said she knew there was a driveway turning off the highway to the left in this curve. Richards testified that she was traveling 35 to 40 miles per hour prior to the accident and that she saw a pedestrian walking along the left side of the road about 20 feet

short of where the shoulder begins to widen. As she approached the curve, she diverted her attention off the highway toward the pedestrian. She thought the pedestrian might have been her brother because he had been having car problems. She testified that she diverted her attention from the highway and looked at the pedestrian long enough to see that he had the wrong hair color and style to be her brother. The pedestrian turned out to be Hanks. Richards stated that after she returned her attention to the highway, she did not have enough time to apply her brakes or to take any kind of evasive action before her pickup crashed into the rear of Rathbun's car.

Shannon McDaniels, who was riding in the middle of the rear seat of Rathbun's vehicle, sustained a head injury and other personal injuries in the accident. She testified at trial that she had no memory of the accident. Paul David Hernandez, who was riding in the right rear seat, died as a result of injuries sustained in the accident.

The pedestrian, Hanks, was walking home from school on the left side of State Highway 170. He testified that he saw the Rathbun car pass him and that the car came to a stop just before impact.

Trooper G.B. Harp is an accident reconstructionist with the Arkansas State Police. He testified the Rathbun vehicle was not stopped in the road at the time of the impact, but was traveling five to seven miles per hour. He testified that Richards should have been able to see the Rathbun vehicle for 324 feet prior to the point of impact and that there was nothing to impair her line of vision. Harp estimated the speed of the Richards' vehicle to be 28 to 43 miles per hour at the time of impact. He stated there were no skid marks from the Richards' vehicle.

Our review of the evidence reveals substantial evidence to support the jury's finding of liability on Rathbun's part. From the foregoing evidence, the jury could have concluded that Rathbun was negligent in driving her vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, that she failed to keep a proper lookout and to maintain control of her vehicle, or that she failed to maintain a proper speed and came to a sudden stop.

There was conflicting testimony as to whether the Rathbun vehicle was stopped or dramatically slowed. It was certainly within the jury's province to weigh the conflicting testimonies of Hanks and Richards that the Rathbun vehicle was stopped with the testimonies of Rathbun, Bigpond, Hamby, and Harp, that the Rathbun vehicle was slowing down at the time of impact. The jury obviously concluded that both drivers, Rathbun and Richards were negligent. The jury assigned fault after hearing all of the testimony by the witnesses while observing their conduct and demeanor on the stand. Both the amount of the verdict and the distribution of fault among the parties are matters within the exclusive province of the jury and we will not substitute our judgment for that of the jury. *Simmons v. Frazier*, 277 Ark. 452, 642 S.W.2d 314 (1982).

The decision by the trial court denying the motions for directed verdict, judgment notwithstanding the verdict, and new trial are affirmed as there was substantial evidence to support the jury's verdict.

## II. EVIDENCE OF RATHBUN'S DRIVER'S LICENSE

Rathbun contends the trial court abused its discretion in allowing opposing counsel to question defendant Rathbun regarding how long she had held a driver's license. On redirect, Rathbun was asked: "You had gotten your regular driver's license when, Ms. Rathbun?" At trial, she objected on grounds of relevance. On appeal, Rathbun argues additionally that A.R.E. Rule 404 prohibits introduction of character traits into evidence in civil cases unless that trait is in issue or it is being offered to reflect upon the veracity of the witness, citing *Brown* v. *Conway*, 300 Ark. 567, 781 S.W.2d 12 (1989).

We observe that Rule 404 is not applicable here, as the question had nothing to do with either the good or bad character of Rathbun. However, we do not address the merits of this latter argument as it is raised for the first time on appeal. *Reynolds* v. *Shelter Mut. Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993).

Evidence relating to the driving skill and experience of a party is relevant in determining whether that party acted negligently. We cannot say the trial court abused its dis-

cretion in allowing the testimony of the length of time Rathbun had been licensed to drive.

## III. EXPERT TESTIMONY

Rathbun contends the trial judge abused his discretion by not allowing the opinion of Trooper Harp concerning some gouge marks left on the highway. Trooper Harp was qualified as an expert witness in the field of accident reconstruction. If allowed to do so, he would have explained to the jury that since the gouge marks were straight, they indicated Rathbun's vehicle was moving at the time of impact; had the gouge marks been curved, they would have indicated Rathbun's vehicle was stopped.

We do not address this argument because if indeed the trial court committed error in disallowing the testimony, it was harmless error. Although the trial judge did not allow the testimony about the gouge marks, it did allow Trooper Harp to give his opinion that Rathbun's vehicle was moving at five to seven miles per hour at the time of impact. Thus, in effect, Rathbun was able to elicit the desired testimony despite the trial court's exclusion of the testimony in question. Any possible error resulting from the exclusion is thereby rendered harmless.

## IV. AMI 901(B)

Rathbun contends the trial court erred in failing to instruct the jury fully on AMI Civ. 3d 901 concerning the common law rules of road. AMI 901(A) requires that a driver of a motor vehicle keep a general lookout, while the bracketed portion of AMI 901(B) requires a driver to keep his or her vehicle under control when the driver sees danger ahead or when it is reasonably apparent the driver is keeping a proper lookout. Rathbun's counsel proffered the bracketed portion of AMI 901(B). The trial court ruled the bracketed portion was not a proper instruction under the facts of this case because there was no evidence that there was any danger ahead to be perceived.

Rathbun relies on the case of *White* v. *Brewer*, 295 Ark. 666, 750 S.W.2d 956 (1988), to support her argument that the bracketed portion of AMI 901(B) should have been given. However,

in *White*, the driver stated that he saw two trucks blocking the roadway prior to the impact. In the present case, Richards testified she did not see Rathbun's vehicle until she hit it. In *White*, the instruction was warranted as the driver admitted seeing the danger ahead.

Based on the testimonies of both drivers, there was no danger ahead to be perceived. On that basis, the trial court ruled the bracketed portion of AMI 901(B) should not be given and that AMI 901(A) adequately covered the facts of this case. We cannot say the trial court erred in so ruling.

### V. AMI 901(C)

Rathbun contends the trial court should have instructed the jury on AMI 901(C), which reads as follows:

> It is the duty of the driver of a motor vehicle to drive at a speed no greater than is reasonable and prudent under the circumstances, having due regard for any actual or potential hazards.

Rathbun produced no evidence that Richards may have been driving unreasonably fast and therefore this instruction was not applicable. Trooper Harp testified that, at the time of the impact, Richards was traveling only 28 to 43 miles per hour. There was no testimony that Richards was exceeding the speed limit before impact. Therefore, whether Richards was driving unreasonably fast was not an issue, and AMI 901(C) was properly refused.

### VI. ARK. CODE ANN. § 16-64-122(d) (Supp. 1993)

Ark. Code Ann. § 16-64-122 declares in pertinent part:

> (a) In all actions for damages for personal injuries or wrongful death or injury to property in which recovery is predicated upon fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party or parties from whom the claiming party seeks to recover damages.

> . . . .

(d) In cases where the issue of comparative fault is submitted to the jury by an interrogatory, counsel for the parties shall be permitted to argue to the jury the effect of an answer to any interrogatory.

Appellant Rathbun contends the trial court erred in interpreting section 16-64-122(d) by ignoring the plain meaning of the statute and by imposing its own view of what the statute should mean. Rathbun contends the statute is not ambiguous and therefore should have been given its plain meaning. She claims the "plain meaning" of section 16-64-122(d) would allow her the opportunity to explain to the jury the effect of finding either defendant (herself or Richards) at fault on a scale of 1% to 99%. In other words, she claims subsection (d) would allow her to argue the effects of contribution among joint tortfeasors.

The trial court considered section 16-64-122 in its entirety and stated that the statute defines comparative fault, in essence, as the comparing of fault between a claiming party and the party against whom the claiming party seeks to recover. The trial court ruled that since Rathbun had asserted a claim against Richards, Rathbun and Richards would be allowed to argue the effects of any interrogatories on the issue of comparing fault between Rathbun and Richards, the two defendants. As an example, the trial court noted that he would allow Rathbun to argue that if the jury found Rathbun over 50% at fault, she would not be allowed to recover a penny from Richards. However, since no party had asserted a claim against either of the plaintiffs Ward and Hernandez, the trial court observed that Ward and Hernandez did not "meet [the statute's] definition of comparative fault." Thus, the trial court ruled that none of the attorneys would be allowed to argue the effect of joint tortfeasor liability.

On appeal, Rathbun contends that, unlike subsections (a) through (c) of section 16-64-122, subsection (d) does not distinguish between parties; thus the effects of *any* distribution of fault may be argued, be it a distribution between plaintiffs and defendants, two defendants, or two plaintiffs. Rathbun insists that because "interrogatory" is described only by the word "any", once the issue of comparative fault is submitted to the jury, section 16-64-122(d) allows counsel to argue the effect of "any" interrogatory, to the jury. Thus, in the instant case, since com-

parative fault (between Rathbun and Richards on Rathbun's claim for damages) was submitted to the jury, Rathbun contends section 16-64-122(d) allows her to argue the effects of contribution among Rathbun and Richards on Ward's and Hernandez's claims against Rathbun and Richards.

We disagree with Rathbun's contention. The trial court reasoned that section 16-64-122(d) was expressly limited to issues of comparative fault and that if the legislature intended to allow counsel to argue issues of contribution and indemnity among joint tortfeasors, it would have so provided when it added subsection (d) to the statute. We agree with the trial court's reasoning. While it is true that the right to contribution from a joint tortfeasor is dependant upon a finding of joint and several liability, we are not persuaded that section 16-64-122(d) allows the concepts and effects of contribution among joint tortfeasors to be argued to the jury. The statute is clear in this respect and is not ambiguous. The trial court did not err in preventing Rathbun from arguing contribution issues to the jury.

We observe that even if the trial court had erred in denying Rathbun the chance to argue the effects of contribution, such an error would be rendered harmless by the jury's apportionment of fault. The jury apportioned 75% of fault to Rathbun and 25% of fault to Richards. The jury obviously felt Rathbun was responsible for the majority of fault, thus they would not have been persuaded to reapportion the fault based on principles of contribution.

## VII. JUROR MISCONDUCT

Pursuant to ARCP Rule 59(a) and Ark. Code Ann. §§ 16-31-101 to -107 (1987 & Supp. 1993), Rathbun moved for a mistrial based on grounds of juror misconduct. Specifically, Rathbun points to four instances of misconduct by juror Ben Harrison and argues those four instances constitute an appearance of impropriety and indicate a reasonable probability of prejudice. Rathbun contends the trial court disregarded the law and abused its discretion by not considering the circumstances as a whole.

Rathbun describes the four instances of misconduct by Harrison as follows. First, during *voir dire*, Harrison failed to disclose the fact that he attended high school with Conrad Odom,

one of the associate attorneys at the firm representing appellee Ward. Second, while in a public restaurant on lunch break from jury deliberations, Harrison waved and said hello to a table of attorneys from the firm representing Ward. Ward's attorney, Tim Smith, and Odom were both at the table. Third, soon after the jury returned its verdict, Harrison and Ward's attorney, Tim Smith, exchanged a "high five" handshake in a bar and had a one-hour conversation about the trial. Fourth, Harrison failed to disclose the fact that his father had been sued by Truman Smith, Rathbun's co-counsel in the instant case, as counsel for a third party in an unrelated lawsuit.

The trial court considered each of the four allegations and concluded there was not enough evidence of juror misconduct presented from which he could conclude Rathbun was possibly prejudiced. First, the trial court observed that, during *voir dire*, Harrison was never asked a particular question that would have required him to disclose the fact that he attended high school with Odom. Second, the trial court observed there was not enough evidence in the affidavits to warrant a finding that any misconduct occurred as a result of the wave and greeting in the restaurant. Third, the trial court admitted to being very disturbed as to the allegation of the "high-five" congratulatory handshake. However, the trial court ruled there was no evidence in the affidavits to support the allegation that the handshake was anything other than a normal greeting. No eyewitnesses to the greeting between Tim Smith and Harrison confirmed the handshake was a congratulatory "high-five" handshake. Finally, the trial court noted there was no evidence that Harrison was aware of the lawsuit between his father and Truman Smith, Ward's co-counsel. Even assuming Harrison had such knowledge, the trial court observed that Harrison was never asked to disclose any lawsuits between family members and attorneys in the instant case.

When a motion for new trial has been denied and the primary issue is the alleged inadequacy of the award, we will sustain the denial unless there is a manifest abuse of discretion. *Diemer* v. *Dischler*, 313 Ark. 154, 852 S.W.2d 793 (1993). Pursuant to ARCP Rule 59(a)(2), the trial court could have granted Rathbun a new trial if the alleged misconduct of the jury materially affected Rathbun's substantial rights. Thus, if the trial court abused its discretion in concluding Harrison's conduct did not

materially affect Rathbun's right to a fair trial, a new trial should have been granted.

As the moving party, Rathbun bore the burden of proving an "appearance of juror misconduct," which this court has previously held to be sufficient to warrant relief under Rule 59(a)(2). Upon our review of the record, we conclude Rathbun failed to demonstrate even an appearance of misconduct by Harrison. The allegations of juror misconduct were never substantiated with any convincing evidence. Given the trial court's careful consideration and analysis of this issue, we cannot say the trial court abused its discretion in denying the motion for new trial.

The judgment is affirmed.