Harold McLAUGHLIN, Reliable Truck Brokers, Inc., d/b/a Champion Transportation Services, Inc. *v.* Toby James COX

95-685                                            922 S.W.2d 327

Supreme Court of Arkansas
Opinion delivered May 13, 1996

*Cypert, Crouch, Clark, & Harwell,* by: *James E. Crouch,* for appellants.

*Austin & Osborne,* by: *Brenda Horn Austin,* for appellee.

ROBERT H. DUDLEY, Justice. This malicious-prosecution case was before this court in a previous appeal. *See Cox* v. *McLaughlin,* 315 Ark. 338, 867 S.W.2d 460 (1993). In that opinion, we reversed a summary judgment in favor of the defendants, Harold McLaughlin and Reliable Truck Brokers, Inc., d/b/a Champion Transportation Services, Inc. Upon remand, the case went to trial, and the jury found that plaintiff, Toby James Cox, was entitled to $18,000 in compensatory damages and $100,000 in punitive damages. The trial court entered judgment accordingly. As this is the second appeal of this case, this court has appellate jurisdiction. Ark. Sup. Ct. R. 1-2(a)(11). We affirm the judgment.

In March 1990, plaintiff Toby Cox operated a truck that was owned by his father, Floyd Cox, and was leased to Westport Truck-

ing Company. Defendant Harold McLaughlin was employed by defendant Reliable Truck Broker, Inc., which did business as Champion Transportation Services, Inc. Defendant Champion was a brokerage company that contacted motor carriers and arranged for the transportation of cargo for various shippers. Defendant Champion contracted with Westport Trucking to haul a load of Alpo Pet Food from a factory in Crete, Nebraska, to a Sam's Wholesale Club in Houston, Texas. The load was to be picked up on March 13 and delivered to Sam's on March 15 or 16. Plaintiff Toby Cox picked up the load in Nebraska on the date scheduled, March 13, and hauled it to Trenton, Texas, where, on March 15, he learned that a check from Westport Trucking to his father had been returned for insufficient funds. He phoned Westport Trucking and was told that the company was without funds, could not pay for hauling the load currently on the trailer, and could not pay other past amounts owed to plaintiff's father. Plaintiff refused to haul the load the rest of the way to Houston unless he was paid. He testified that on that same day, the 15th, he phoned Terry Lafarlette, a broker for defendant Champion, and told him of his predicament. He stated that Mr. Lafarlette told him he would have to get his money from Westport Trucking. On Friday, March 16, defendant Champion was informed, apparently by Sam's, that the load might not have been delivered as scheduled. On Monday, March 19, defendant Champion confirmed the fact that the load had not been delivered to Sam's. Champion called Westport Trucking and got a description of the tractor and trailer, the license number, and plaintiff's driver's license number. Defendant McLaughlin testified that defendant Champion did not want to lose its valuable brokerage account with Alpo Pet Foods. Champion realized it owed money to Westport Trucking for other loads and that it might offset some of the money that it owed to Westport Trucking by paying Mr. Cox. In the meantime, plaintiff determined that Westport owed his father about $4,300 for hauling, including the payment for hauling the load currently aboard. On March 20, defendant McLaughlin, on behalf of defendant Champion, reached an agreement with plaintiff by which Champion would pay $4,200 to plaintiff if he would go ahead and deliver the load to Sam's. Champion paid $2,100 to Mr. Cox at that time. The parties disagree about when the other $2,100 was to be paid. Plaintiff testified that it was due when he got to Houston, and Champion says it was due when the load was unloaded at Sam's. Plaintiff arrived at Sam's on March 22, five days

after the originally scheduled date, and learned that, contrary to the information he had received from Champion, he would have to deliver half of the load to another location.

After receiving the information, plaintiff refused to unload the dog food. Champion then arranged for plaintiff to unload the dog food at another warehouse. Plaintiff called Champion from that warehouse and asked for the remaining $2,100. Defendant Champion refused to pay, and plaintiff refused to unload. Immediately afterward, an employee of the warehouse told McLaughlin that plaintiff had left the warehouse with the load. Defendant McLaughlin phoned the car-theft division of the Houston Police Department and told a policeman that plaintiff had just left the warehouse with his customer's load. The same day, defendant McLaughlin, a resident of Washington County, contacted the office of the Prosecuting Attorney in Washington County and executed an affidavit. As a result, plaintiff was charged with "fraud in the acquisition of authorization to provide vehicle transportation of property." *See* Ark. Code Ann. § 5-37-524 (Repl. 1993). Meanwhile, plaintiff hauled the load back to his home in Trenton, Texas. There is no evidence indicating that plaintiff ever attempted to remove any of the load from the trailer. He was arrested in Texas on the Washington County felony charge. Ultimately, after discussing the case with plaintiff's attorney, the prosecuting attorney *nolle prossed* the charge.

Plaintiff filed suit for breach of contract and malicious prosecution. The trial court granted the motion for summary judgment on the contract count on the ground that plaintiff had a pre-existing duty to deliver the load to Houston; thus, there was a failure of consideration for the subsequent agreement with Champion. The trial court alternatively held that the contract was made under duress. The trial court granted summary judgment on the malicious prosecution count on the grounds that probable cause existed for the felony charge as a matter of law and alternatively on the ground that McLaughlin and Champion relied on the advice of the prosecuting attorney. Plaintiff appealed from the summary judgment. *Cox* v. *McLaughlin*, 315 Ark. 338, 867 S.W.2d 460 (1993). We reversed and remanded because genuine issues of material fact remained in regard to both the breach of contract and malicious prosecution claims.

The case was tried in Washington County Circuit Court in 1994, and a jury found for plaintiff on the malicious prosecution

claim and awarded him $18,000 in compensatory damages and $100,000 in punitive damages. Defendants McLaughlin and Champion filed a motion for a judgment notwithstanding the verdict and alternative motions for a new trial and remittitur. The trial court denied these motions, and defendants appeal.

Upon trial, during the testimony of plaintiff's father on direct examination, plaintiff's counsel asked him what remedy was available if Westport did not pay. Defendant's counsel objected on the ground that the answer called for a legal conclusion. The court overruled the objection and stated that the witness could testify to "matters he has come to know in the trucking business." The witness testified that he had asserted a lien.

In overruling the objection, the trial court commented:

> He's probably got a right to say that he exercised what he claims is a lien on the load. Now whether he can do that or not, you all give me the statutes, and I will instruct them on it. *You can ask him if that is what he did, but whether it's legally right or not, that's another matter.* (Emphasis added.)

We allow the trial court broad discretion in evidentiary rulings. *Firestone Tire & Rubber Co.* v. *Little*, 276 Ark. 511, 639 S.W.2d 726 (1982). Unless the trial court abuses that broad discretion, this court will not reverse. *Id.* Regardless of whether plaintiff's family had a right to a possessory lien, their belief that they could assert one was relevant to their states of mind concerning delivery of the load.

Defendants argue that our case *Car Transportation* v. *Garden Spot Dist., Inc.*, 305 Ark. 82, 805 S.W.2d 632 (1991) requires us to reverse, but that case is distinguishable. It was a conversion case in which the defendants attempted to defend by saying they had not converted the goods because they had a right to assert a lien. Their argument was that they could withhold the goods for payment of the freight charges. *Id.* at 87, 805 S.W.2d at 634. Here, the issue is not whether plaintiff wrongfully converted the freight, but whether he had the intent to commit "fraud in acquisition of authorization to provide motor vehicle transportation of property." *See* Ark. Code Ann. § 5-37-524 (Repl. 1993).

The defendants next contend that the jury's verdict was not supported by substantial evidence, and the trial court erred in

denying their motion for a directed verdict and in denying their post-trial motion for a judgment notwithstanding the verdict. A trial court may enter judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict of the jury and the moving party is entitled to judgment as a matter of law. *Dr. Pepper Bottling Co. v. Franz*, 311 Ark. 136, 842 S.W.2d 37 (1992). A trial court may not substitute its view for that of the jury, and the jury's verdict must be clearly against the preponderance of the evidence in order to be set aside. *Razorback Cab of Fort Smith, Inc. v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993). The standard regarding a motion for a new trial is the same. *See* Ark. R. Civ. P. 50(b). On appeal, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the party for whom the original judgment was entered. *See McCuiston v. City of Siloam Springs*, 268 Ark. 148, 594 S.W.2d 233 (1980).

■ In Arkansas, the essential elements of malicious prosecution are: "(1) [a] proceeding instituted or continued by the defendant against the plaintiff[;] (2) [t]ermination of the proceeding in favor of the plaintiff[;] (3) absence of probable cause for the proceedings[;] (4) [m]alice on the part of the defendant[;] (5) [d]amages." *Farm Service Coop. v. Goshen Farms*, 267 Ark. 324, 331-32, 590 S.W.2d 861, 865 (1979).

■ Absence of probable cause is an essential element in a claim for malicious prosecution. However, "where the defendant makes a full, fair, and truthful disclosure of all the facts known to him before competent counsel and then acts bona fide upon [such] advice [this will be a good defense to a claim of malicious prosecution]." *Culpepper v. Smith*, 302 Ark. 558, 564, 792 S.W.2d 293, 298 (1990) (quoting Larry C. Wallace, Note, *Malicious Prosecution - The Law in Arkansas*, 22 Ark. L. Rev. 340, 350 (1968)); *see also Jennings Motors v. Burchfield*, 182 Ark. 1047, 34 S.W.2d 455 (1931) (holding that it is a complete defense to a malicious prosecution claim if defendant presented to counsel all facts available to defendant). In the context of malicious prosecution, probable cause means such a state of facts or credible information which would induce an ordinarily cautious person to believe that the accused is guilty of the crime for which he is charged. *Cordes v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989).

Appellant was charged with "fraud in acquisition of authorization to provide motor vehicle transportation of property." Ark.

Code Ann. § 5-37-524 (Repl. 1993) provides in material part as follows:

>    (b) A person commits fraud in the acquisition of authorization to provide motor vehicle transportation of property if that person obtains authority by telephone, wire, or other electronic means from any person in this state to transport goods within or without this state and thereafter:
>
>    (1) Fails to deliver the products in the time and manner prescribed by the contract, with intent to defraud the owner or shipper of the goods; or
>
>    (2) Appropriates to his own use the goods contracted to be transported; or
>
>    (3) Appropriates to his own use the proceeds from the sale, barter, or other transfer of ownership of the goods contracted to be transported.

*Id.* § 5-37-524(b).

 ■ It was essentially undisputed that plaintiff told defendant McLaughlin that Westport owed his family about $4,300, that plaintiff would not move the load unless someone paid him, and then they agreed McLaughlin would pay plaintiff and his family $4,200. Plaintiff testified that McLaughlin paid $2,100 and agreed to pay the other $2,100 *when he arrived at Sam's.* Defendant McLaughlin testified he agreed to pay plaintiff and his family $4,200, and they agreed that plaintiff would be paid $2,100 before he took the load to Houston and would be paid the other $2,100 *after the load was delivered to Sam's.* The jury obviously found in favor of plaintiff on this issue. The testimony of plaintiff and his family that he was to be paid when he arrived at Sam's and that he would not unload the cargo until he was paid constituted substantial evidence of the agreement. This evidentiary finding was supported by plaintiff's testimony that he never wanted to keep the dog food, but rather wanted to hold it only until someone paid him to deliver it. This constituted substantial evidence from which the jury could conclude that no reasonable person would think defendants were being defrauded.

 ■ Even if the absence of probable cause is found, it is a complete defense to a malicious prosecution action if it is found that the defendant made a full and fair disclosure to competent

counsel of all facts known to the defendant, and defendant acted in good faith on this advice. *Culpepper* v. *Smith*, 302 Ark. at 564, 792 S.W.2d at 294. However, the burden is upon the person bringing the charges to show that they were brought on the advice of counsel. *Eggleston* v. *Ellis*, 291 Ark. 317, 724 S.W.2d 462 (1987).

The jury could have found that McLaughlin left out important facts when he discussed the case with the deputy prosecutor. There was evidence that he did not tell the prosecutor that he initiated the agreement to pay plaintiff; rather, he told the prosecutor that plaintiff refused to deliver the goods unless he gave him $4,300. A jury could have reasonably found that this omission resulted in a mischaracterization of fact. The investigator's notes reflect further inconsistencies that support the jury's findings. The notes reflect that McLaughlin said the load was two weeks overdue, but other evidence indicated that it was only six days late. The notes reflect that the load was not located until March 20, but plaintiff's mother testified that she informed Champion where the load was on March 15. The prosecutor's record shows that McLaughlin told her that plaintiff demanded "2,800.00 additional dollars" to off-load at Jo-Mar, a second warehouse in Houston. This statement could make the investigator think that plaintiff demanded *another* $2,800 in addition to the agreed-upon $2,100. This did not happen, and McLaughlin knew it.

■ McLaughlin's testimony indicated that he sought to have plaintiff charged for the sole purpose of recovering the dog food. He testified that he "went down [to the prosecutor's office] to see if there had been a criminal offense perpetrated by the load that was missing." He stated that his intent was "to try to recover the load for Champion." While this does not by itself imply malice, McLaughlin's state of mind is illustrated by a later part of his testimony.

> I have heard of the arrest that he endured. I have heard that he was arrested twice. As far as whether I made any efforts to see that he was arrested again, I had Shirley Fox call once he had been arrested and request the prosecutor's office to tell us where the load of freight was. I found out that they arrested him but they didn't recover the load. As far as whether I pursued efforts to make sure he was arrested again, I called the prosecutor's office and said, "What has transpired has not accomplished my outset for coming down." What I set out to do was to get my load. I couldn't make the call

whether it was criminal or civil.

This testimony supports an inference that defendant McLaughlin, regardless of whether the charges were justified, used the criminal process to pursue a remedy that was available through a civil action.

■■ Defendants next contend that the trial court erred in refusing to direct a verdict on the issue of punitive damages, in submitting the issue of punitive damages to the jury, and in failing to enter a judgment notwithstanding the verdict on the issue of punitive damages. A motion for directed verdict should only be granted when there is insufficient evidence to support the verdict. Ark. R. Civ. P. 50. The standard for determining sufficiency on review is well settled: (1) the evidence is viewed in light most favorable to appellee; (2) the jury's finding will be upheld if there is any substantial evidence to support it; and (3) substantial evidence is that of sufficient force and character to induce the mind past speculation and conjecture. *Derrick* v. *Mexico Chiquito, Inc.*, 307 Ark. 217, 819 S.W.2d 4 (1991). As noted earlier, judgment notwithstanding the verdict may only be granted if there is no substantial evidence to support the verdict of the jury, and the moving party is entitled to judgment as a matter of law. *Dr. Pepper Bottling Co.* v. *Franz, supra.* An instruction for punitive damages may be given when there is evidence that a party likely " 'knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in reckless disregard of the consequences from which malice could be inferred.' " *Allred* v. *Demuth*, 319 Ark. 62, 66, 890 S.W.2d 578, 580 (1994) (quoting *Dongary Holstein Leasing, Inc.* v. *Covington*, 293 Ark. 112, 116, 732 S.W.2d 465, 467 (1987)).

■ It is clear that to support an award of punitive damages, there must be a showing of "wilfulness, wantonness, or conscious indifference." *Louisiana and Northwest R.R. Co.* v. *Willis*, 289 Ark. 410, 415, 711 S.W.2d 805, 808 (1986). "Negligence alone, however severe, is not sufficient to sustain such an award." *Id.* In *Simpson* v. *Weeks*, 530 F. Supp. 197 (E.D. Ark. 1977), a civil-rights suit under 42 U.S.C. § 1983, the federal district court articulated a helpful standard for wantonness. It said:

> An act is wantonly done if done in reckless disregard or indifference to the rights of another. An act is oppressively done if done in a way or manner which violates the right of

another person with unnecessary harshness or severity as by misuse or use of authority or power.

*Id.* at 207. In that case, punitive damages were awarded when the evidence showed that the defendants intended to intimidate the plaintiff from exercising a right. *Id.* Here, the jury could have concluded that McLaughlin and Champion mischaracterized the facts to the deputy prosecutor in order to intimidate plaintiff and force him to deliver the load without regard to their bargain.

■ Defendants next contend that the trial court erred in not reducing the amount of compensatory damages and punitive damages and this court should reduce both the compensatory and punitive damages. The jury awarded plaintiff $18,000 in compensatory damages. The jury had before it evidence that plaintiff Cox spent $7,500 for a bond, lost $4,200 in wages, and paid attorney's fees of $1,800 to defend the charge, or a total of $13,500 out-of-pocket expenses. In addition, there was evidence of mental suffering. The amount of damages growing out of mental anguish is ordinarily left to the determination of the jury. *Pursley v. Price*, 283 Ark. 33, 670 S.W.2d 448 (1984). In short, there was substantial evidence to support the award of compensatory damages.

■ When reviewing an award for punitive damages, we consider the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *McNair v. McNair*, 316 Ark. 299, 870 S.W.2d 756 (1994). Appropriate compensation is not the test, but rather such damages are to be a penalty for conduct that is malicious or done with the deliberate intent to injure another. The penalty should be sufficient to deter others from such conduct. *Interstate Freeway Servs. v. Houser*, 310 Ark. 302, 310, 835 S.W.2d 872, 876 (1992).

■ Damages may be reduced if they are so large as to shock the conscience of the court, or if it is clear that the jury was influenced by passion or prejudice. *W.M. Bashlin Co. v. Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982). The amount of the punitive damages awarded does not shock the conscience of this court, and there is no clear evidence that the jury was influenced by passion or prejudice. Defendants admit that the only evidence of "passion or prejudice" would be the possibility that the jury was influenced by plaintiff's father becoming emotional at one time when he was on

the witness stand. This occurred when defendant's counsel was cross-examining him. Counsel asked if he had discussed terminating the lease with Westport in the past because Westport had been slow to pay. Plaintiff's father stated that they had considered changing, but had decided not to do so when his other son was killed in a car wreck and they had a lot of funeral expenses. This one remark, which was elicited by defendants, cannot be said to be proof that the jury was swayed by passion or prejudice. Further, we will not substitute our judgment for that of the jury when there is basis in the evidence for the award. *Clayton v. Wagnon*, 276 Ark. 123, 633 S.W.2d 19 (1982).

Affirmed.