Jerry ANSLEMO *v.* Charles TUCK

96–156                                924 S.W.2d 798

Supreme Court of Arkansas
Opinion delivered July 1, 1996

*Q. Byrum Hurst Law Offices*, by: *Q. Byrum Hurst, Jr.*, for appellant.

*W. Paul Blume*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Jerry Anselmo, appeals the jury's verdict in favor of appellee, Charles Tuck, from the Washington County Circuit Court. Because this case involves a question concerning the law of torts, this court has jurisdiction of the appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(16). In support of his appeal, Anselmo argues that the jury's verdict is not supported by substantial evidence and that the trial court erred in denying his motion for judgment notwithstanding the verdict. Because we find no merit to either argument, we affirm.

## FACTS

This cause of action arose out of a traffic accident which occurred on September 28, 1992, in Fayetteville, Arkansas, in which a school bus driven by appellee Tuck struck the front of a car driven by Dennis Little as the bus was attempting to negotiate a left turn. Photographs revealed that the accident was relatively minor, and that the damage was confined to the front end of the driver's side of the car. Appellant Anselmo was a passenger in Little's car.

Testimony from both sides agreed on the basic facts of the accident, differing only on the exact location of Little's car and whether the accident was the proximate cause of Anselmo's injuries. Anselmo and Little testified that the car was behind the stop sign at the intersection, while Tuck testified that the car was sitting beyond the stop sign, just inside the intersection, when the impact occurred. Anselmo testified that he suffered neck and foot injuries as a result of the impact of the accident. The proximate cause of Anselmo's injuries was hotly contested at trial.

The officer at the scene of the accident testified that immediately upon reaching the scene of the accident he inquired whether anyone had been hurt, and that no one involved indicated any injury. The officer further stated that he did not observe Anselmo limping in any way.

Dennis Little testified that he observed Anselmo limping "a little bit" at the accident scene, and that Anselmo said he hit his foot and that it hurt. Little further testified that because Anselmo was concerned about whether they could drive the car away from the scene, Anselmo took it upon himself to walk one and a half to two blocks to retrieve his car. Testimony later revealed that Little's car was in fact driven away from the scene. No evidence was elicited from Little concerning the condition of Anselmo's neck at the accident scene. Little stated that it would cost approximately $3,000.00 to repair the damage to the car, but that a custom paint job was included in the price.

Anselmo testified that the impact of the accident was "pretty big," and that as a result, he was thrown into the dash. Anselmo stated that it was the combination of being thrown into the car's dash and bracing himself with his foot that caused him to jam his toe on the car's dash. Anselmo admitted that he did not think much about the injury at the time, and that he was not "hugely limping" at the scene. Anselmo stated that the next morning his neck felt stiff and he had trouble turning his head either direction. Anselmo stated that he saw several physicians concerning his neck injury, and that he had been prescribed physical therapy and some pain medication. Anselmo stated that because of the injury to his foot he had an operation which left him immobile and required six weeks of recovery. Anselmo testified that sometime after the accident and his various medical treatments he began experiencing pain in his left arm, his left eye, his groin area, and the small of his back. He

concluded his testimony by listing all the activities (such as hiking, jogging, and cycling) he used to be able to engage in before the accident, and indicated that he could no longer enjoy these recreations.

On cross-examination, Anselmo admitted that he had not actually been thrown into the dash on impact, but that he was thrown forward and his foot hit the dash. Anselmo stated that he had not been wearing his seat belt at the time of the accident. Anselmo also conceded that there was no damage to the right side of the car, the side where he was seated.

Two doctors testified (via depositions) on behalf of Anselmo. Dr. Paul Doty, an orthopedic surgeon, testified that he treated Anselmo for neck pain. Dr. Doty stated that he diagnosed Anselmo as having a musculoligamentous injury of the neck, which meant that there was no fracture to the bone. Dr. Doty stated that there is rarely any objective manner to verify this type of injury, but that an x-ray would show some separation of bones if the ligament injury is so severe to cause spinal instability. Dr. Doty testified that that type of severe injury was not present in Anselmo. Dr. Doty admitted on cross-examination that his diagnosis of Anselmo's injury was based upon Anselmo's subjective claims of pain and the patient history taken from Anselmo.

Dr. Steven Watson, a podiatrist, testified that when he first examined Anselmo, he was complaining of pain in his left foot in the heel and forefoot area. Dr. Watson stated that an x-ray of Anselmo's foot revealed some degenerative arthritic changes of the joint of the first metatarsal, some osteophytes in and around the joint, as well as a loose piece in and around the joint. Dr. Watson initially prescribed a treatment consisting of injections of anti-inflammatory medication, contrast soaks, elevation of the foot, no physical activity, and jogging shoes for support. In January 1994, Dr. Watson discussed with Anselmo an elective surgical procedure for his foot. Dr. Watson stated that Anselmo elected to undergo surgery, and that the surgery was performed in February 1994. Dr. Watson stated that Anselmo's injuries were not caused by the trauma of the traffic accident, but that the trauma had aggravated the arthritic joint.

On cross-examination, Dr. Watson conceded that the only indication he had of a trauma caused by the traffic accident in

question was from Anselmo himself. Dr. Watson stated that the problems he diagnosed in Anselmo's joint are not conditions which occur within a short period of time, and that activity such as running or jogging is particularly harmful to that joint. Dr. Watson stated that the conditions of Anselmo's joint could not have occurred in the short time since the traffic accident.

Before resting his case, Anselmo presented testimony from three additional lay witnesses, none of which had any first-hand knowledge of the accident or the cause of Anselmo's injuries. The defense called only one witness — appellee Charles Tuck. Tuck testified that immediately after the accident occurred, he stopped the bus and checked to see if anyone was hurt. Tuck stated that he talked to Anselmo and that Anselmo stated he did not think he was hurt. Tuck stated that he observed Anselmo walking around at the scene and that Anselmo did not appear to have a limp.

## SUBSTANTIAL EVIDENCE / JUDGMENT NOTWITHSTANDING THE VERDICT

Anselmo argues that there was not substantial evidence to support the verdict, and that the trial court erred in denying his motion for judgment notwithstanding the verdict. In support of his arguments, Anselmo asserts the evidence showed that he and Little did nothing to contribute to the accident and that Tuck's improper left turn resulted in the bus striking Little's car in the car's own lane of travel. While this supposition may be true, Anselmo fails to argue or otherwise demonstrate that Tuck's actions on that date were the proximate cause of his injuries. Because there was substantial evidence to support the jury's verdict in favor óf Tuck, we conclude that the trial court did not err in denying judgment notwithstanding the verdict.

This court has consistently held that a trial court may enter a judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict and the moving party is entitled to a judgment as a matter of law. *See, e.g., Dr. Pepper Bottling Co. v. Frantz*, 311 Ark. 136, 842 S.W.2d 37 (1992); *Dedman v. Porch*, 293 Ark. 571, 739 S.W.2d 685 (1987). The trial court may not substitute its view of the case for that of the jury, and the jury's verdict must be clearly against the preponderance of the evidence in order to be set aside. *McLaughlin v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996). On appeal from a denial of judgment notwithstanding

the verdict, this court reviews the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Dr. Pepper Bottling Co.*, 311 Ark. 136, 842 S.W.2d 37. Whether there is substantial evidence to support the jury's verdict is the standard of review for the denial of judgment notwithstanding the verdict. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996).

■ Substantial evidence is that evidence which is beyond mere suspicion or conjecture and which is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion of the matter one way or another. *Williams v. O'Neal Ford, Inc.*, 282 Ark. 362, 668 S.W.2d 545 (1984). In considering sufficiency of the evidence on appeal, we will only consider evidence favorable to the appellee together with all its reasonable inferences. *Dedman*, 293 Ark. 571, 739 S.W.2d 685. In reviewing the evidence, the weight and value to be given the testimony of the witnesses lies within the exclusive province of the jury. *Rathbun v. Ward*, 315 Ark. 264, 866 S.W.2d 403 (1993).

■ In the present case, Anselmo's complaint alleged a cause of action against Tuck for negligence. The burden of proof is always on the party asserting negligence, and negligence is never presumed. *Morehart v. Dillard Dep't Stores*, 322 Ark. 290, 908 S.W.2d 331 (1995). To make a prima facie case of negligence, a plaintiff must prove that he sustained damages, that the defendant was negligent, and that such negligence was the proximate cause of the damages. *Mason v. Jackson*, 323 Ark. 252, 914 S.W.2d 728 (1996); *Morehart*, 322 Ark. 290, 908 S.W.2d 331. It is the third prong of this test that is at issue here, as Anselmo's proof as to proximate cause of his injuries was tenuous at best.

■ We have defined proximate cause as "that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Craig v. Traylor*, 323 Ark. 363, 370, 915 S.W.2d 257, 260 (1996), (quoting *Williams v. Mozark Fire Extinguisher Co.*, 318 Ark. 792, 796, 888 S.W.2d 303, 305 (1994)). Proximate cause is generally a question for the jury, becoming a question of law only if reasonable minds could not differ. *Craig*, 323 Ark. 363, 915 S.W.2d 257. Based on the testimony at trial, reasonable minds could easily differ as to whether Tuck's actions caused Anselmo's injuries and, furthermore, as to whether the injuries even

arose during the accident.

The officer who investigated the accident stated that Anselmo did not indicate to him that he was injured and that he did not see Anselmo limping at the scene. Little, Anselmo's friend, stated that Anselmo was limping a little, but that Anselmo volunteered to walk nearly two blocks to retrieve his own car, even though the testimony revealed that there was no reason why Little's car could not be driven from the scene. Anselmo's own expert medical witnesses could not say that the injuries to his neck and foot were the result of the accident. In fact, Dr. Doty stated that his diagnosis of Anselmo's neck injury was entirely subjective, based only on Anselmo's claims of pain. Dr. Watson similarly testified that as far as an aggravation of the degenerative arthritis in Anselmo's foot was concerned, he had only Anselmo's word that the condition was aggravated by a trauma such as the impact of an automobile accident. Dr. Watson did state with certainty, however, that Anselmo's foot condition could not have been caused by any accident and that the surgery he underwent was an elective procedure.

In short, Anselmo's entire claim that he suffered injuries from the impact of what was revealed to be a minor accident was based solely on his testimony and credibility. As it is within the province of the jury to determine the weight and value of the witnesses' testimony, *Rathbun*, 315 Ark. 264, 866 S.W.2d 403 (1993), we will not attempt to second guess its determinations. Suffice it to say that based on all of the testimony heard by the jury, we cannot say that its verdict was based on mere suspicion or conjecture. Because Anselmo did not meet his burden of proof concerning the proximate cause of his injuries, we conclude there was substantial evidence to support the verdict in favor of the appellee Tuck. For that reason we hold that the trial court did not err in denying Anselmo's motion for judgment notwithstanding the verdict.

Affirmed.

DUDLEY, J., not participating.